## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MUKESH KUMAR, KESHAV KUMAR, DEVI LAAL, NIRANJAN, PAPPU, BRAJENDRA, MAHENDRA KUMAR, SHYAM SUNDER, PREM SINGH, BABLU, CHHAIL WIHAREE, RAMKISHAN, HARENDRA, LAUXMI NARAIN, RAMA RAM, UMESH CHAND, VIJENDRA SINGH, RAMESH KUMAR, DEVA RAM, RUPA RAM, and KHIMA RAM REBARI, *on behalf of themselves and all others similarly situated*,

                                *Plaintiffs,*

        *v.*

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC., BAPS MERCER LLC, BAPS ROBBINSVILLE LLC, BAPS FELLOWSHIP SERVICES, INC., BAPS ATLANTA, LLC, BAPS CHINO HILLS, LLC, BAPS DEVELOPMENT, INC., BAPS HOUSTON, LLC, BAPS CHICAGO, LLC, BOCHASANWASI SHRI AKSHARPURUSHOTTAM SWAMINARAYAN SANSTHA (an India Public Trust) *a/k/a* BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, BHARAT PATEL, PANKAJ PATEL, KANU PATEL, RAKESH PATEL, HARSHAD CHAVDA, and PRASHANT DARSHAN DAS SADHU,

                                *Defendants.*

**SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Civ. Action No.:  21-CV-11048

Plaintiffs Mukesh Kumar, Keshav Kumar, Devi Laal, Niranjan, Pappu, Brajendra, Mahendra Kumar, Shyam Sunder, Prem Singh, Bablu, Chhail Wiharee, Ramkishan, Harendra, Lauxmi Narain, Rama Ram, Umesh Chand, Vijendra Singh, Ramesh Kumar, Deva Ram, Rupa Ram, and Khima Ram Rebari, on behalf of themselves and all others similarly situated, by and through their attorneys Kakalec Law PLLC, Radford & Keebaugh, LLC, and Jaffe Glenn Law Group, P.A., as and for their Second Amended Complaint, allege as follows:

## I.    Preliminary Statement

1.    This case is brought seeking redress for shocking violations of the most basic laws applicable to workers in this country, including laws prohibiting forced labor. Plaintiffs Mukesh Kumar, Keshav Kumar, Devi Laal, Niranjan, Pappu, Brajendra, Mahendra Kumar, Shyam Sunder, Prem Singh, Bablu, Chhail Wiharee, Ramkishan, Harendra, Lauxmi Narain, Rama Ram, Umesh Chand, Vijendra Singh, Ramesh Kumar, Deva Ram, Rupa Ram, and Khima Ram Rebari (collectively "Plaintiffs") and hundreds of other similarly situated Indian nationals (the "R-1 workers" or the "workers') were recruited in India to come to the United States with "R-1" religious visas to do stonework and other construction work in New Jersey and other states.

2.    In New Jersey, Plaintiffs worked for Defendants Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc. ("BAPS Swaminarayan Sanstha"), BAPS Mercer LLC ("BAPS Mercer"), BAPS Robbinsville LLC ("BAPS Robbinsville"), and BAPS Fellowship Services, Inc. ("BAPS Fellowship"), Bochasanwasi Shri Aksharpurushottam Swaminarayan Sanstha (an India Public Trust) a/k/a Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha ("BAPS India"), and Defendant

individuals Bharat Patel, Pankaj Patel, Kanu Patel, Rakesh Patel, and Swami Prasanand.[1] The workers spent years building, improving upon, and maintaining the BAPS Shri Swaminarayan Mandir (hereinafter "the Robbinsville temple") in Robbinsville, New Jersey, which news reports call the largest Hindu temple in the United States.

3.      Some of the Plaintiffs also worked building and maintaining temples affiliated with BAPS Swaminarayan Sanstha and BAPS India in Chino Hills, California (a suburb of Los Angeles) ("the Los Angeles temple"); Bartlett, Illinois (a suburb of Chicago) ("the Chicago temple"); Stafford, Texas (a suburb of Houston) ("the Houston temple"); and/or Lilburn, Georgia (a suburb of Atlanta) ("the Atlanta temple").  The R-1 workers who were employed at those temples also worked long hours for very little pay, suffering violations of their employment and civil rights.

4.      Under United States immigration law, R-1 religious visas are available to members of the religious denomination sponsoring the visa holders who minister or work in religious vocations or occupations.  Here, Defendants told the United States government that Plaintiffs and other R-1 workers were coming to the U.S. as religious "volunteers."   In reality, however, the Plaintiffs and other R-1 workers performed solely manual — not religious — labor at the temples, nearly all were not members of Defendants' denomination, and they were not volunteers.

5.      Over a period of many years, the Defendants overseeing the construction of the Robbinsville temple required the Plaintiffs and the other R-1 workers to perform demanding work at the Robbinsville temple for more than 87 hours per week:  twelve and

---

[1]  A "Chart of Parties" summarizing the abbreviations, party groupings, class designations, and RICO enterprises in this pleading is attached hereto as Exhibit A.

a half hours per day, seven days a week, with only a few days off per year.   For these long and difficult hours of work, the workers were paid an astonishing $450 per month, and even less when these Defendants took illegal deductions.  The workers' hourly pay rate came to approximately $1.20 per hour – well below the applicable federal and state minimum wages, and in fact even less than the federal minimum wage in effect as far back as 1963.

6.      The work some of the Plaintiffs and other R-1 workers performed at the Los Angeles temple, Chicago temple, Houston temple, and Atlanta temple differed from the New Jersey work primarily in that workers in those locations generally worked fewer hours per day than they did at the Robbinsville temple. In general, workers at the Los Angeles, Chicago, Houston, and Atlanta temples worked at least eight hours per day, seven days a week, with only about one day off per month. Though they worked fewer hours than they did in New Jersey, their hourly wages still fell well short of the federal and state minimums.

7.      Coming to the United States to perform labor as masons and construction workers – although Defendant BAPS Swaminarayan Sanstha, BAPS India, and their agents presented them to the U.S. government as "religious workers" – Plaintiffs and those R-1 workers who came to New Jersey were forced to live and work in a fenced, guarded compound on the Robbinsville temple grounds, which they were not allowed to leave unaccompanied by overseers affiliated with Defendants.  The Defendants overseeing the Robbinsville temple construction, through their agents, confiscated the workers' passports as soon as the workers left the airport at JFK upon their arrival in the United States, and kept those passports during the entirety of the workers' time in New Jersey to

prevent the workers from leaving.  Security guards in BAPS uniforms were stationed at the Robbinsville temple premises where the workers lived and worked; cameras around the Robbinsville temple monitored and recorded the workers' activities.

8.      Similarly, at the Atlanta temple, the Houston temple, the Chicago temple, and the Los Angeles temple, the R-1 workers generally slept in a large hall or other buildings in the respective temple compounds. Security guards were posted at the compounds, and the R-1 workers were not allowed to possess their passports. For a time when working at the Los Angeles temple, the R-1 workers were required to live in a hotel that was walking distance from the temple, and supervisors escorted them between the Los Angeles temple and the hotel.

9.      At the Robbinsville temple and elsewhere, workers were prohibited from speaking with outside visitors to the temple; failure to obey this rule would result in workers' meager pay being reduced even further, the workers being sent back to India, or other disciplinary action.   At times, supervisors told the workers that the police would arrest them if they left.  One R-1 worker, Mohan Lal, died while he was subjected to forced labor at the Robbinsville temple; the Defendants overseeing the Robbinsville temple construction then retaliated against workers who organized to demand, among other things, that Mohan Lal's remains to be treated according to his — not the Defendants' — religious rituals and that the Defendants improve working conditions.[2]

10.     At the Robbinsville temple and elsewhere, the Defendants intentionally caused the workers to reasonably believe that if they tried to leave their work and the temple

---

[2] At least three other former BAPS workers—Puran Singh, Bachchu Singh, and Magi Lal—died in India shortly after leaving the United States.

compounds, they would suffer physical restraint and serious harm.  At the Robbinsville

temple and elsewhere, the Defendants also threatened the use of law or legal process to

prevent the workers from leaving.

11.    Defendants intentionally recruited workers from the Scheduled Castes, also

known as Dalit, from the Scheduled Tribes, also known as Adivasi, and from other

marginalized groups in India.  People in the Scheduled Castes in India, for example, were

formerly considered "untouchables" and "endure near complete social ostracization."[3]

Similarly, "Adivasis continue to face prejudice and often violence from mainstream

Indian society. They are at the lowest point of almost every socio-economic indicator."[4]

At the Robbinsville temple and elsewhere, temple leadership did what they could to

remind these marginalized workers of their place in the social hierarchy.  Defendant

Swami Prasanand, for example, called the workers "worms," thus exacerbating the

psychological coercion the workers experienced.

12.    Defendants' actions constitute forced labor, trafficking with respect to forced

labor, document servitude, conspiracy, and confiscation of immigration documents in the

course of and with the intent to engage in fraud in foreign labor contracting.  Based on

this conduct, Plaintiffs here bring claims under the Trafficking Victims Protection Act

---

[3] Human Rights Watch, *Caste Discrimination: A Global Concern* (2001), https://www.hrw.org/reports/2001/globalcaste/caste0801-03.htm (last visited May 2, 2021); *see also* Prilali Sur, *Under India's caste system, Dalits are considered untouchable.  The coronavirus is intensifying that slur*, CNN.com (Apr. 16, 2020), https://www.cnn.com/2020/04/15/asia/india-coronavirus-lower-castes-hnk-intl/index.html (last visited May 2, 2021) ("Dalits are forced to take up the jobs such as cleaning, manual scavenging, working at brick kilns and leather-crafting -- occupations considered "filthy" or "dishonorable" for higher-caste communities.")

[4] Minority Rights Group International, *Adivasis*, https://minorityrights.org/minorities/adivasis-2/ (last visited Oct. 22, 2021).

("TVPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs also bring claims under the Fair Labor Standards Act ("FLSA"), New Jersey wage and hour laws, and New Jersey common law for the massive underpayment of wages on behalf of themselves and other similarly-situated workers. And they bring claims under 42 U.S.C. § 1981 ("Section 1981") for race discrimination based on ancestry and ethnic characteristics.

13.     Plaintiffs who worked at the Atlanta temple, the Houston temple, the Chicago temple, and the Los Angeles temple also bring class claims under Georgia, California, Illinois, and Texas law, on behalf of themselves and others similarly-situated workers who performed stonework and/or construction work at these temples.

14.     Plaintiffs bring their TVPA, RICO, Section 1981, and state wage claims, along with state common law claims for unjust enrichment and quantum meruit, as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all non-supervisory R-1 workers who performed stonework and/or construction work on the Robbinsville temple grounds, and they bring their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) for unpaid wages and damages.

## II.    Jurisdiction and Venue

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1337; 29 U.S.C. § 201 *et seq.* (the Fair Labor Standards Act);  18 U.S.C. § 1595(a) (TVPA); and 18 U.S.C. § 1964(c) (RICO).

16.     The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).   Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claims.

17.     Venue is proper in this district pursuant to 28 U.S.C. §1391.  A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

18.     Defendants reside and/or do business in this district.

19.     Pursuant to the RICO, "the ends of justice" require that this Court have jurisdiction over all Defendants.  *See* 18 U.S.C. § 1965(b); *Lauren Gardens, LLC v. Mckenna*, 948 F.3d 105, 117-21 (3d Cir. 2020).

### III.     Parties

#### A.  Plaintiffs

20.     Plaintiffs are Indian nationals who were recruited by Defendants and/or Defendants' agents to work in non-supervisory roles for Defendants as construction and/or stone workers under R-1 visas at the Defendants' temples in Robbinsville, New Jersey; Chino Hills, California; Bartlett, Illinois; Stafford, Texas; and/or Lilburn, Georgia at various times between 2004 and the present.

21.     All Plaintiffs bring this case on behalf of themselves and all other similarly-situated workers who worked in non-supervisory roles as construction and/or stone workers under R-1 visas at the Robbinsville temple.

22.     Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, and Khima Ram Rebari also bring this case on behalf of themselves and all other similarly-situated workers who worked in non-supervisory roles as construction and/or stone workers under R-1 visas at the Los Angeles temple.

23.     Plaintiffs Devi Laal, Vijendra Singh, and Rupa Ram also bring this case on behalf of themselves and all other similarly-situated workers who worked in non-supervisory roles as construction and/or stone workers under R-1 visas at the Houston temple.

24.     Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, and Khima Ram Rebari also bring this case on behalf of themselves and all other similarly-situated workers who worked in non-supervisory roles as construction and/or stone workers under R-1 visas at the Atlanta temple.

25.     Plaintiffs Devi Laal, Lauxmi Narain, and Rama Ram also bring this case on behalf of themselves and all other similarly-situated workers who worked in non-supervisory roles as construction and/or stone workers under R-1 visas at the Chicago temple.

26.     Plaintiff Mukesh Kumar is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from May 2018 through October 2020.

27.     Plaintiff Keshav Kumar is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from May 2018 through November 2018, and then again from April 2019 through October 2020.

28.     Plaintiff Devi Laal is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan

Sanstha, and their agents recruited him in India to work at the their temples in the United States.  He worked at the Chicago temple from 2003 until approximately 2006, at the Houston temple from 2005 to approximately 2006 (he was sent to work at the Chicago temple for a period of time while he was working at the Houston temple), and at the Robbinsville temple from May 2019 through September 2020.

29.     Plaintiff Niranjan is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple between May 2018 and November 2020.

30.     Plaintiff Niranjan also worked for one or more of the Defendants at the Robbinsville temple and the Los Angeles temple between 2011 and 2014.

31.     Plaintiff Niranjan is named in this Complaint using his full legal name.  On his R-1 visa, Niranjan is listed as Niranjan's surname, and "FNU," meaning "first name unknown," is listed for his given name.

32.     Plaintiff Pappu is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple between approximately April 2018 and November 2018, and again between approximately May 2019 and October 2020.

33.     Plaintiff Pappu is named in this Complaint using his full legal name.

34.     Plaintiff Brajendra is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan

Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from May 2018 through October 2020.

35.    Plaintiff Brajendra is named in this Complaint using his full legal name.  On his R-1 visa, Brajendra is listed as Brajendra's surname, and  "FNU," meaning "first name unknown," is listed for his given name.

36.    Plaintiff Mahendra Kumar is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from May 2018 through November 2018, and again from April 2019 until October or November 2020.

37.    Plaintiff Shyam Sunder is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from May 2018 through November 2018, and again from April 2019 until October or November 2020.

38.    Plaintiff Prem Singh is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India. BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple and the Los Angeles temple from approximately March 2012 until approximately February 2014.  He returned to the Robbinsville temple from April 2018 until November 2018 and again from April or May 2019 through October 2020.

39.     Plaintiff Bablu is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple in 2017 and then the Los Angeles temple and the Robbinsville temple from approximately May 2018 until October or November 2020.

40.     Plaintiff Bablu is named in this Complaint using his full legal name.  On his R-1 visa, Bablu is listed as Bablu's surname, and "FNU," meaning "first name unknown," is listed for his given name.

41.     Plaintiff Chhail Wiharee is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from approximately August to November 2015, and then the Robbinsville temple, the Los Angeles temple, and the Atlanta temple from approximately March or April 2016 until October or November 2020.

42.     Plaintiff Ramkishan is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple from approximately May 2018 until October 2020 (he briefly returned to India during this period).

43.     Plaintiff Harendra is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He

worked at the Robbinsville temple and the Los Angeles temple from approximately from May 2018 until November 2018 and again from April or May 2019 through October 2020.

44.    Plaintiff Harendra is named in this Complaint using his full legal name.  On his R-1 visa, Harendra is listed as Harendra's surname, and  "FNU," meaning "first name unknown," is listed for his given name.

45.    Plaintiff Lauxmi Narain is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents recruited him in India to work at the Robbinsville temple.  He worked at the Robbinsville temple and the Los Angeles temple from approximately from April 2017 until October or November 2020.  He also had worked at the Chicago temple in approximately 2004.

46.    Plaintiff Rama Ram is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Atlanta and Chicago temples, where he worked from 2006 through 2009.  He returned to the United States in 2011 and worked at the Los Angeles. Chicago, and Robbinsville temples until he returned to India in 2015.  He then worked at the Robbinsville temple from April or May 2018 until October 2020.

47.    Plaintiff Umesh Chand is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Robbinsville

temple. He worked at the Robbinsville temple and the Los Angeles temple from approximately May 2018 until October or November 2020.

48.     Plaintiff Vijendra Singh is an Indian national and belongs to the Scheduled Castes, also known as Dalit.  He resides in Rajasthan, India.  BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Houston temple, where he worked in 2004 and 2005.  He returned to India and then came to work at the Atlanta temple from 2006 until 2009.  He briefly returned to India and then, in approximately November 2009, he worked at the Los Angeles temple and remained there until approximately December 2011, when he again returned to India.  In 2017, he worked at the Los Angeles temple for sixteen or seventeen months and the New Jersey temple for two or three months.  He again briefly returned to India.  Starting in approximately November 2019, he worked at the Los Angeles temple for about one month and the New Jersey temple for eight to ten months. He returned to India in October 2020.

49.     Plaintiff Ramesh Kumar is an Indian national and belongs to the Scheduled Tribes, also known as Adivasi. He resides in the United States. BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Robbinsville temple, where he worked from approximately April 2013 until approximately October 2014. He returned to India and then, in approximately July 2019, he returned to the United States and started working at the Robbinsville temple. Starting in approximately December 2019, he was taken to the Atlanta temple, where he worked until approximately May 2020. Starting in approximately May 2020, he was taken back to the Robbinsville temple, where he worked until May 2021.

50. Plaintiff Deva Ram is an Indian national and belongs to the Scheduled Tribes, also known as Adivasi. He resides in the United States. BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Robbinsville temple, where he worked starting in approximately July 2019. Then, in approximately December 2019, he was taken to the Atlanta temple, where he worked until approximately May 2020. Starting in approximately May 2020, he was taken back to the Robbinsville temple, where he worked until May 2021.

51. Plaintiff Rupa Ram is an Indian national and belongs to the Scheduled Tribes, also known as Adivasi. He resides in the United States. BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Houston temple, where he worked from approximately February 2013 to September 2016, after which he returned to India. He then worked at the Robbinsville temple starting in approximately July 2019 until May 2021.

52. Plaintiff Khima Ram Rebari is an Indian national and belongs to the Scheduled Tribes, also known as Adivasi. He resides in the United States. BAPS India, BAPS Swaminarayan Sanstha, and their agents initially recruited him in India to work at the Atlanta temple, where he worked for about 18 months starting approximately April 2006 to 2007. He then returned for a few months to India, and then was brought to the Los Angeles temple, where he worked for about six months from approximately 2007 to 2008, after which point he returned to India. In July 2019 he returned to the United States and began working at the Robbinsville temple for approximately 18 months. For about 4-5 months, he worked at the Atlanta temple, before returning to work at the Robbinsville

temple, where he worked until May 2021 (with the exception of January 13, 2021 until March 26, 2021, when he was in India).

53.    Plaintiffs Mukesh Kumar, Keshav Kumar, Devi Laal Niranjan, Pappu, and Brajendra consent to being party Plaintiffs in this action.   (*See* ECF Nos. 2, 2-1, 5 and 5-1, consent forms for Mukesh Kumar, Keshav Kumar, Devi Laal Niranjan, Pappu, Brajendra).

54.    Plaintiffs Mahendra Kumar, Shyam Sunder, Prem Singh, Bablu, Chhail Wiharee, Ramkishan, Harendra, Lauxmi Narain, Rama Ram, Umesh Chand, Vijendra Singh, Ramesh Kumar, Deva Ram, Rupa Ram, and Khima Ram Rebari  consent to being party Plaintiffs in this action.  (*See* ECF No. 20-1, Declaration of Sukhvinder Kaur and accompanying Exhibits 1-17, annexed to the First Amended Complaint.)

## B.  Entity Defendants

55.    Defendant Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc. is a Delaware corporation registered to do business in New Jersey.  Its registered office is 81 Suttons Lane, Piscataway, NJ 08854-5723 and its registered alternative name is BAPS Swaminarayan Sanstha.

56.    BAPS Swaminarayan Sanstha sought the approval for the Plaintiffs and the other R-1 workers to come to the United States to work at the temple.  BAPS Swaminarayan Sanstha's name is on visas obtained by the workers.

57.    BAPS Mercer is a New Jersey limited liability corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

58.     According to the Mercer (County) Property Information Portal, BAPS Mercer owns the property where the Robbinsville temple is located, which is at 112 North Main Street in Robbinsville, New Jersey (Mercer County).

59.     BAPS Mercer was one of the entities which built the Robbinsville temple.

60.     BAPS Mercer obtained state and local approvals and permits for the construction of the temple in Robbinsville.  Construction approved by the Mercer County Planning Board included modifying several temple building footprints, adding additional buildings and parking spaces, landscaping, and the installation of storm sewers and utilities.

61.     In addition, the Robbinsville Township Zoning Board adopted a resolution of approval allowing BAPS Mercer to construct an approximately 146,420 square foot building for storage, as a religious kitchen, and to receive deliveries at the same site.

62.     BAPS Robbinsville is a New Jersey limited liability company with its registered office at 81 Suttons Lane, Piscataway, NJ 08854-5723.

63.     Upon information and belief, BAPS Robbinsville owned at least part of the property where the Robbinsville temple was constructed and developed, and participated in violations of the law at issue here.

64.     BAPS Fellowship is a member or manager of BAPS Robbinsville.  Its address is also 81 Suttons Lane, Piscataway, NJ 08854-5723.

65.     Upon information and belief, BAPS Fellowship owned at least part of the property where the Robbinsville temple was constructed and developed, and participated in violations of the law at issue here.

66.     BAPS Atlanta, LLC ("BAPS Atlanta"); is a Delaware limited liability corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

67.     According to records maintained by the Delaware Department of State's Division of Corporations, BAPS Atlanta was incorporated on November 7, 2007.

68.     According to records maintained by the Georgia Secretary of State's Office, BAPS Atlanta was registered to do business in Georgia on November 10, 2007 and was certified on November 19, 2007.

69.     According to public records maintained by the Gwinnett County Tax Assessor's Office, available at http://www.gwinnettassessor.manatron.com/Default.aspx, BAPS Atlanta owns the property where the Atlanta temple is located, which is at 460 Rockbridge Road NW in Lilburn, Georgia (Gwinnett County), and has owned the property since December 19, 2007.

70.     BAPS Atlanta or its predecessor is one of the entities which constructed and developed the Atlanta temple, and/or is a successor of the entities which developed the Atlanta temple.

71.     BAPS Atlanta's ownership of the property where the Atlanta temple is located overlapped with periods in which Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, Khima Ram Rebari, and other members of the Georgia Class worked at the Atlanta temple.

72.     Upon information and belief, BAPS Atlanta participated in violations of the law at issue here.

73.     BAPS Chino Hills, LLC ("BAPS Chino Hills") is a Delaware limited liability corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

74.     According to public records maintained by the Delaware Department of State's Division of Corporations, BAPS Chino Hills was incorporated on February 24, 2017.

75.     According to public records maintained by the San Bernardino County Assessor-Recorder-Clerk, available at https://arcpropertyinfo.sbcounty.gov/, BAPS Chino Hills owns the property where the Los Angeles temple is located, which is at 15100 Fairfield Ranch Road in Chino Hills, California (San Bernardino County), and has owned the property since October 23, 2017.

76.     According to a 2020 filing with the San Bernardino County Assessor-Recorder-Clerk, BAPS Fellowship is a manager or member of BAPS Chino Hills.

77.     BAPS Chino Hills or its predecessor was one of the entities which developed the Los Angeles temple, and/or a successor of the entities which developed the Los Angeles temple.

78.     BAPS Chino Hills's ownership of the property where the Los Angeles temple is located overlapped with periods in which Plaintiffs Chhail Wiharee, Harendra, Bablu, Lauxmi Narain, Vijendra Singh, and other members of the California Class worked at the Los Angeles temple.

79.     Upon information and belief, BAPS Chino Hills participated in the violations of law at issue here.

80.     BAPS Development Inc. ("BAPS Development") is a Delaware corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

81.     According to public records maintained by the Delaware Department of State's Division of Corporations, BAPS Development was incorporated on July 13, 2005.

82.     According to public records maintained by the San Bernardino County Assessor-Recorder-Clerk, BAPS Development was the owner of the property where the Los Angeles temple is located, which is at 15100 Fairfield Ranch Road in Chino Hills,

California (San Bernardino County), from August 9, 2007 until October 23, 2017, when the ownership was transferred to BAPS Chino Hills.

83. BAPS Development's ownership of the property where the Los Angeles temple is located overlapped with periods in which Plaintiffs Prem Singh, Niranjan, Rama Ram, Vijendra Singh, Khima Ram Rebari, and other members of the California Class worked at the Los Angeles temple.

84. BAPS Development or its predecessor was one of the entities which developed the Los Angeles temple, and/or a successor of the entities which developed the Los Angeles temple.

85. Upon information and belief, BAPS Development participated in the violations of law at issue here.

86. BAPS Houston, LLC ("BAPS Houston"); is a Delaware limited liability corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

87. According to public records maintained by the Delaware Department of State's Division of Corporations, BAPS Houston was incorporated on November 7, 2007.According to public records available through the Fort Bend Central Appraisal District's Property Search Portal, available at https://esearch.fbcad.org/, BAPS Houston owns the property where the Houston temple is located, which is at 1150 Brand Lane in Stafford, Texas (Fort Bend County), and has owned the property since December 19, 2007.

88. BAPS Houston or its predecessor is one of the entities which constructed and developed the Houston temple, and/or is a successor of the entities which developed the Houston temple.

89.     BAPS Houston's ownership of the property where the Houston temple is located overlapped with periods in which Plaintiff Rupa Ram and other members of the Texas Class worked at the Houston temple.

90.     Upon information and belief, BAPS Houston participated in the violations of law at issue here.

91.     BAPS Chicago, LLC ("BAPS Chicago") ; is a Delaware limited liability corporation with its business address at 81 Suttons Lane, Piscataway, NJ 08854-5723.

92.     According to public records maintained by the Delaware Department of State's Division of Corporations, BAPS Chicago was incorporated on November 7, 2007.

93.     According to the DuPage County Property Lookup Portal, available online at https://www.dupageco.org/PropertyInfo/PropertyLookup.aspx, BAPS Chicago owns the property where the Chicago temple is located, which is at 1859 S Route 59 in Bartlett, Illinois (DuPage County). While the BAPS website lists the address of the Chicago temple as 1851 S IL Route 59, Bartlett, Illinois, according to the Wayne Township Assessor's Office, available online at https://www.waynetownshipassessor.com/members/parcel_search.aspx, the parcel with the address 1851-1859 S Route 59, Bartlett, Illinois is one parcel.

94.     Upon information and belief, BAPS Chicago has owned the property where the Chicago temple is located since late 2007 or early 2008.

95.     BAPS Chicago or its predecessor is one of the entities which constructed and developed the Chicago temple, and/or is a successor of the entities which developed the Chicago temple

96.    BAPS Chicago's ownership of the property where the Chicago temple is located overlapped with periods in which Plaintiff Rama Ram and other members of the Illinois Class worked at the Chicago temple.

97.    Upon information and belief, BAPS Chicago participated in violations of the law at issue here.

98.    BAPS India is an India non-government public trust.

99.    BAPS India's city of registration is Ahmedabad, in the state of Gujarat. BAPS India recruited the Plaintiffs and other R-1 workers in India, drafted and submitted documents containing false information for the purpose of securing R-1 visas for the workers, seized the Plaintiffs' and other R-1 workers' passports while they were in India.

100.    BAPS Swaminarayan Sanstha, BAPS Mercer, BAPS Robbinsville, BAPS Fellowship, BAPS Atlanta, BAPS Chino Hills, BAPS Development, BAPS Houston, BAPS Chicago, and BAPS India, will be referred to herein collectively as "the Entity Defendants."

## C. Individual Defendants

101.    Bharat Patel is an employer and supervisor of R-1 workers at the Robbinsville temple and is an employer of the Plaintiffs and the other Robbinsville R-1 workers.

102.    Upon information and belief, Bharat Patel resides in the State of New Jersey.

103.    Pankaj Patel is an employer and supervisor of R-1 workers at the Robbinsville temple and is an employer of the Plaintiffs and the other Robbinsville R-1 workers.

104.    Upon information and belief, Pankaj Patel resides in the State of New Jersey.

105.    Kanu Patel is an employer of the Plaintiffs and the R-1 workers, and supervised the workers, directly or indirectly.

106.    Kanu Patel facilitated the workers obtaining R-1 visas to work at the Robbinsville temple.

107.    Upon information and belief, Kanu Patel also facilitated workers obtaining R-1 visas to work at the Los Angeles, Chicago, Houston, and Atlanta temples.

108.    Kanu Patel is the Chief Executive Officer of BAPS Swaminarayan Sanstha and is the registered agent and authorized representative for BAPS Mercer and BAPS Robbinsville.

109.    Upon information and belief, Kanu Patel resides in the State of New Jersey.

110.    Rakesh Patel is an employer of the Plaintiffs and the R-1 workers at the Robbinsville temple, and indirectly supervised the workers in Robbinsville temple.

111.    Upon information and belief, Rakesh Patel also oversaw the construction of the Los Angeles temple, the Robbinsville temple, and the Atlanta temple.

112.    Swami Prasanand is an employer and supervisor of R-1 workers at the Robbinsville temple and is an employer of the Plaintiffs and the other Robbinsville R-1 workers.

113.    Upon information and belief, Swami Prasanand resides in the State of New Jersey.

114.    Harshad Chavda is an individual who, along with his associates, works as a recruiter of labor for the Employer Defendants.

115.    Upon information and belief, Harshad Chavda resides in Rajasthan, India.

116.    Harshad Chavda has been variously described as an "architect" in news reports,[5] and as an "engineer" on the BAPS website,[6] responsible for the development of marble and stones for temples. One blog post claims that in the development of the New Delhi BAPS complex, "Responsibility for sculpting the marble was wholeheartedly undertaken by Harshad Chavda. Under his supervision, volunteers and craftsmen at the Sanstha's workshops in Pindwada and surrounding villages worked day and night to meet the demanding schedules."[7]

117.    Defendants Bharat Patel, Pankaj Patel, Kanu Patel, Rakesh Patel, Swami Prasanand, and Harshad Chavda hereinafter will be referred to collectively as "the Individual Defendants."

### D. Allegations as to All Defendants

118.    At all relevant times, Defendants were a "venture" within the scope of 18 U.S.C. § 1595(a).

119.    BAPS Swaminarayan Sanstha, BAPS Mercer, BAPS Robbinsville, BAPS Fellowship, BAPS Atlanta, BAPS Chino Hills, BAPS Development, BAPS Houston, BAPS Chicago, BAPS India, Bharat Patel, Pankaj Patel, Kanu Patel, Rakesh Patel and Swami Prasanand are hereinafter referred to collectively as the "Employer Defendants."

120.    BAPS Swaminarayan Sanstha, BAPS India, BAPS Mercer, BAPS Robbinsville, BAPS Fellowship, Bharat Patel, Pankaj Patel, Kanu Patel, Swami Prasanand, and Rakesh Patel are hereinafter collectively referred to as the "Robbinsville Employer Defendants."

---

[5] *See* Neeraj Nanda, *300 artisans carving 5,500 Marble pieces in India for first Jain temple in Victoria*, SOUTH ASIA TIMES (Aug. 9, 2021), https://www.southasiatimes.com.au/news/?p=13965.
[6] *See Mandir Inauguration Festival*, BAPS SWAMINARAYAN SANSTHA NEWS (Feb. 2003), https://www.swaminarayan.org/news/2003/02/NewDelhi/inaugural1.htm.
[7] *Places to Visit in Delhi*, ALL ABOUT INDIA BLOG (May 13, 2021), https://allaboutindiatravel.blogspot.com/2012/05/places-to-visit-in-delhi.html

121.    BAPS Swaminarayan Sanstha, BAPS India, BAPS Fellowship, BAPS Atlanta, and Rakesh Patel are hereinafter collectively referred to as the "Atlanta Employer Defendants."

122.    BAPS Swaminarayan Sanstha, BAPS India, BAPS Fellowship, BAPS Chino Hills, BAPS Development, Inc., and Rakesh Patel are hereinafter collectively referred to as the "Los Angeles Employer Defendants."

123.    BAPS Swaminarayan Sanstha, BAPS India, BAPS Fellowship, BAPS Houston, and Rakesh Patel are hereinafter collectively referred to as the "Houston Employer Defendants."

124.    BAPS Swaminarayan Sanstha, BAPS India, BAPS Fellowship, BAPS Chicago, and Rakesh Patel are hereinafter collectively referred to as the "Chicago Employer Defendants."

125.    At all times relevant to this action,

    a.  The Robbinsville Employer Defendants employed or jointly employed the Plaintiffs and other R-1 workers who worked at the Robbinsville temple;

    b.  The Atlanta Employer Defendants employed or jointly employed the Plaintiffs and other R-1 workers who worked at the Atlanta temple;

    c.  The Los Angeles Employer Defendants employed or jointly employed the Plaintiffs and other R-1 workers who worked at the Los Angeles temple;

    d.  The Houston Employer Defendants employed or jointly employed the Plaintiffs and other R-1 workers who worked at the Houston temple;

e.   The Chicago Employer Defendants employed or jointly employed the Plaintiffs and other R-1 workers who worked at the Chicago temple.

126.   At all times relevant to this action,

a.   the Robbinsville Employer Defendants were "employers" of Plaintiffs and the other R-1 workers who worked at the Robbinsville temple, and these Plaintiffs and other R-1 workers were "employees" of the Robbinsville Employer Defendants, within the meaning of the FLSA and the New Jersey Wage & Hour and Wage Payment laws;

b.   the Atlanta Employer Defendants were "employers" of Plaintiffs and the other R-1 workers who worked at the Atlanta temple, and these Plaintiffs and other R-1 workers were "employees" of the Atlanta Employer Defendants, within the meaning of the FLSA;

c.   the Los Angeles Employer Defendants were "employers" of Plaintiffs and the other R-1 workers who worked at the Los Angeles temple, and these Plaintiffs and other R-1 workers were "employees" of the Los Angeles Employer Defendants, within the meaning of the FLSA, the California Labor Code, and related Wage Orders;

d.   the Houston Employer Defendants were "employers" of Plaintiffs and the other R-1 workers who worked at the Houston temple, and these Plaintiffs and other R-1 workers were "employees" of the Houston Employer Defendants, within the meaning of the FLSA;

e.   the Chicago Employer Defendants were "employers" of Plaintiffs and the other R-1 workers who worked at the Chicago temple, and these

Plaintiffs and other R-1 workers were "employees" of the Illinois Employer Defendants, within the meaning of the FLSA and  the Illinois Minimum Wage Law.

127.    Upon information and belief, the Employer Defendants were an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s) in that they had "employees engaged in commerce or in the production of goods for commerce, or … [had] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and they had "an annual  gross volume of sales made or business done" of not less than $500,000.

128.    Upon information and belief, each of the Plaintiffs and the R-1 workers were individually engaged in commerce or in the production of goods for commerce.

### E.  The RICO Enterprises

129.    The Entity Defendants were an enterprise ("RICO Enterprise I") within the meaning of that term as defined by the RICO in that they were associated in fact though not a legal enterprise.  *See* 18 U.S.C. § 1961(4).

130.    All Defendants were associated with RICO Enterprise I.

131.    The Entity Defendants and BAPS Atlantic City, LLC; BAPS Care International, Inc.; BAPS Charities, Inc.; BAPS Cherry Hill, LLC; BAPS Clifton, LLC; BAPS Delaware, LLC; BAPS Development, Inc.; BAPS East Windsor, LLC; BAPS Edison Limited Liability Company; BAPS Endowment, Inc.; BAPS Hankins, LLC; BAPS Hospitality, LLC; BAPS Independence, LLC; BAPS Jersey City, LLC; BAPS Northeast Development, Inc.; BAPS Shayona, Inc.; and Bochasanwasi Shri Akshar Purushottam

Swaminarayan Sanstha – Northeast, Inc. were an enterprise ("RICO Enterprise II") within the meaning of that term as defined by the RICO in that they were associated in fact though not a legal enterprise. *See* 18 U.S.C. § 1961(4).

132.    All Defendants were associated with RICO Enterprise II.

133.    BAPS Swaminarayan Sanstha; BAPS India; BAPS Atlanta; BAPS Chino Hills; BAPS Houston; BAPS Chicago; and BAPS Development were an enterprise ("RICO Enterprise III") within the meaning of that term as defined by the RICO in that they were associated in fact though not a legal enterprise. *See* 18 U.S.C. § 1961(4).

134.    The Defendants associated with RICO Enterprise III were BAPS Swaminarayan Sanstha, BAPS India, and, upon information and belief, Rakesh Patel.

135.    BAPS Swaminarayan Sanstha was an enterprise ("RICO Enterprise IV) within the meaning of that term as defined by the RICO in that it was a legal entity.

136.    All Defendants were associated with RICO Enterprise IV.

## IV.    Factual Allegations

### A.  Statutory and Regulatory Structure of the R-1 Visa Program

137.    An R-1 visa is available only to  "an alien … who (i) for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and (ii) seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph 27(c)(ii)."  8 U.S.C. § 1101(a)(15)(R).

138.    The work described in subclauses (I), (II), and (III) of 8 U.S.C. § 1101(a)(27) is:

> (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination; (II) before September 30, 2015, in order to work for

the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or (III) before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of title 26) at the request of the organization in a religious vocation or occupation.

139.    According to the U.S. Citizenship and Immigration Services website, "[a]n R1 nonimmigrant is an alien who is coming to the United States temporarily to work at least part time … as a minister or in a religious vocation or occupation."

140.    According to the same website, to qualify for an R-1 visa, an individual "must have been a member of a religious denomination having a bona fide non-profit religious organization in the United States for at least two years immediately before filing the petition."

141.    An organization seeking R-1 visas for one of the enumerated purposes must submit a Form I-129 Petition for Nonimmigrant Worker ("I-129) to U.S. Citizenship and Immigration Services ("USCIS"), along with an R-1 Classification Supplement.

142.    The representative of the organization who submits the I-129 must sign a declaration certifying as follows: "I certify, under penalty of perjury, that I have reviewed this petition and that all of the information contained in this petition, including all responses to specific questions, and in the supporting documents, is complete, true, and correct.

143.    Similarly, the R-1 Classification Supplement contains attestations which the organization's representative must "certify, under penalty of perjury, that the contents of this attestation and the evidence submitted with it are true and correct."

144.    If the organization's sworn representations in the I-129 and the R-1 Classification Supplement meet USCIS's requirements for R-1 visa petitions, USCIS approves the I-129.

145.    Following USCIS's approval of the I-129,  the U.S. Consulate interviews the prospective visa recipients and determines whether to issue the visas.

146.    If the U.S. Consulate issues the visas, they are attached to the visa recipients' passports.

147.    R-1 visas may be granted for a period of admission to the United States of up to 30 months, with the possibility of extensions for an additional 30 months.

### B. Misrepresentations in R-1 Visa Submissions

148.    The acts and omissions described herein were committed by the indicated Defendant or Defendants through their respective RICO Enterprises.

149.    The indicated Defendant or Defendants used the mail and/or wires in furtherance of the acts and omissions described herein.

150.    BAPS Swaminarayan Sanstha, BAPS India, and related individuals/entities caused to be submitted to USCIS Form I-129s and R-1 Classification Supplements mischaracterizing Plaintiffs and other similarly situated workers as individuals who would work in the United States as volunteers in a religious vocation or occupation.

151.    Representatives of BAPS Swaminarayan Sanstha and/or BAPS India signed the I-129s and R-1 Classification Supplements certifying, under penalty of perjury, that the information and supporting evidence was true and correct.

152.    In fact, the Plaintiffs and other similarly situated workers were not volunteers in a religious vocation or occupation.  Instead, they were wage-earning manual laborers.

153.   Upon information and belief, the representatives of BAPS Swaminarayan Sanstha and/or BAPS India who signed the I-129s and R-1 Classification Supplements knew those documents contained material misrepresentations.

154.   In reliance on BAPS's misrepresentations, USCIS approved the I-129, and the U.S. Consulate issued R-1 visas to Plaintiffs and other similarly situated workers.

155.   Specifically, and upon information and belief, BAPS Swaminarayan Sanstha, BAPS India, and related individuals/entities submitted I-129s and R-1 Classification Supplements as follows:

| Approximate I-129/R-1 Classification Submission Date | Approximate Dates of Employment | Workers Employed | Temple Work Location(s) |
|---|---|---|---|
| 2003 or 2004 | 2004-2005/2006 | Devi Lal | Chicago, Houston |
| | | Lauxmi Narain | Chicago |
| | | Vijendra Singh | Houston, Atlanta |
| | | Similarly situated workers | Chicago, Houston, Atlanta |
| 2005 | 2005/2006-2009 | Rama Ram | Chicago, Atlanta |
| | | Khima Ram Rebari | Los Angeles, Atlanta |
| | | Similarly situated workers | Chicago, Atlanta, Houston |
| 2009 | 2009-2011 | Vijendra Singh | Los Angeles |
| | | Similarly situated workers | Los Angeles |
| 2011 | 2011/2012-2015/2016 | Niranjan | Los Angeles, Robbinsville |
| | | Rama Ram | Los Angeles, Robbinsville |
| | | Prem Singh | Los Angeles, Robbinsville |
| | | Similarly situated workers | Los Angeles, Robbinsville |
| 2013 | 2013-2014 | Ramesh Kumar | Robbinsville |
| | | Similarly situated workers | Robbinsville |
| 2012 or 2013 | 2013-2016 | Rupa Ram | Houston |
| | | Similarly situated workers | Houston |

| | | | |
|---|---|---|---|
| **2015** | 2015-2020 | Chhail Wiharee (visa issued on July 17, 2015) | Los Angeles, Atlanta, Robbinsville |
| | | Similarly situated workers | Los Angeles, Atlanta, Robbinsville |
| **2017** | 2017-2020 | Vijendra Singh | Los Angeles, Robbinsville |
| | | Bablu | Robbinsville |
| | | Lauxmi Narain (visa issued February 13, 2017) | Los Angeles, Robbinsville |
| | | Brajendra Kasotiya (visa issued August 23, 2017) | Robbinsville |
| | | Similarly situated workers | Los Angeles, Robbinsville |
| **2018** | 2018-2020 | Umesh Chand (visa issued January 12, 2018) | Los Angeles, Robbinsville |
| | | Mahendra Kumar (visa issued January 12, 2018) | Robbinsville |
| | | Keshav Kumar (visa issued January 12, 2018) | Robbinsville |
| | | Pappu (visa issued January 12, 2018) | Robbinsville |
| | | Shyam Sunder (visa issued January 12, 2018) | Robbinsville |
| | | Bablu (visa issued January 12, 2018) | Los Angeles, Robbinsville |
| | | Prem Singh | Robbinsville |
| | | Devi Lal | Robbinsville |
| | | Ramkishan (visa issued January 12, 2018) | Robbinsville |
| | | Harendra (visa issued January 12, 2018) | Los Angeles, Robbinsville |
| | | Mukesh Kumar (visa issued January 12, 2018) | Robbinsville |
| | | Niranjan (visa issued March 16, 2018) | Robbinsville |
| | | Rama Ram (visa issued April 20, 2018) | Robbinsville |
| | | Similarly situated workers | |
| **2019** | 2019-2020 | Ramesh Kumar (visa issued June 12, 2019) | Atlanta, Robbinsville |
| | | Deva Ram (visa issued June 12, 2019) | Atlanta, Robbinsville |
| | | Khima Ram Rebari | Atlanta, Robbinsville |
| | | Rupa Ram | Robbinsville |

Page 32 of 86

| | | Similarly situated workers | Atlanta, Robbinsville |
|---|---|---|---|

**C. Recruitment of workers in India for the Robbinsville temple, the Los Angeles temple, the Chicago temple, the Houston temple, and the Atlanta temple.**

156.   The Employer Defendants utilized agents who were contractors and others to recruit Plaintiffs and the other R-1 workers. Defendants' agents, including but not limited to Defendant Harshad Chavda and his associates, were connected with the network of Bochasanwasi Shri Akshar Purushottam Swaminarayan ("BAPS") temples in India, and particularly individuals associated with BAPS India, which is based in Ahmedabad, India.

157.   Defendant Bharat Patel also directly recruited workers in India to work at the Robbinsville temple.  For example, Defendant Bharat Patel, along with others, recruited Plaintiff Pappu to work in New Jersey when Defendant Bharat Patel was visiting India. Two or three times, Defendant Bharat Patel represented to Plaintiff Pappu that if he worked at the Robbinsville temple he would receive better work and salary than in India.

158.   The BAPS associates, trustees, organizations, and temples in India, including Defendant Harshad Chavda and his associates, worked in concert with the Employer Defendants to make arrangements for Plaintiffs and the R-1 workers to come to the United States.

159.   The contractors and BAPS associates, including Defendant Harshad Chavda and his associates, working through their prior contacts with workers and neighbors in India, recruited workers who were interested in obtaining stonework and construction jobs in the United States.

160.    After workers were recruited for work at the Robbinsville temple, they were required to get medical examinations in India.  These medical examinations took place in Ahmedabad and Pindwara, at medical facilities affiliated with BAPS.  Plaintiffs and, upon information and belief, the other R-1 workers had to travel, at their own expense, to obtain these medical examinations.

161.    Workers were also required to sign documents in connection with their recruitment for work in the United States.  The documents, which were called "agreements," were unilaterally drafted and imposed on the workers, and the workers had no ability to alter or bargain over them. The "agreements" were provided to the workers by BAPS-affiliated individuals during meetings in India.  Workers had to travel, at their own expense, to the meeting locations, in some cases multiple times.

162.    The "agreements" were approximately 10 pages long.  Some workers were given versions of the "agreement" entirely in English, and others received two versions of the agreement, one in Hindi and one in English.

163.    Almost all, if not all, of the R-1 workers do not read or understand English; none of the named Plaintiffs read or understand English.

164.    Workers were not given any time to review the "agreements" – even the Hindi versions of the "agreement" – but were just told to quickly sign in multiple places.

165.    The description of the U.S. work that BAPS-related individuals, including Harshad Chavda and his associates, gave the Plaintiffs and the other R-1 workers in India was a far cry from the work the Plaintiffs and other R-1 workers were ultimately required to perform.

166. Plaintiffs and the other R-1 workers were falsely told they would be working much shorter workdays – ranging from four to seven hours per day – than the twelve to thirteen hours per day they actually were required to work at the Robbinsville temple, and than the somewhat shorter days they actually were required to work at the Los Angeles temple, the Atlanta temple, the Houston temple, and the Chicago temple.

167. Plaintiffs and the other R-1 workers also were falsely told that they would work 20-25 days per month, rather than the 30 or 31 days per month that they actually worked.

168. The Plaintiffs and the other R-1 workers were not told specifically what their pay rate for the work at the Robbinsville temple would be, but rather they were just told that they would be paid what the other R-1 workers already working at the Robbinsville temple were being paid. Plaintiffs and other R-1 workers who worked at the Los Angeles temple, the Atlanta temple, the Houston temple, and the Chicago temple were similarly not informed about what their pay rate for their work would be at those locations.

169. During the recruitment process, the workers were told that they would be coming to the United States as R-1 visa holders.

170. At various times, workers were coached by BAPS-related personnel about what to say when they went to the U.S. Embassy for visa interviews.

171. Although the Plaintiffs and R-1 workers would be performing manual labor for pay at the temples, they were told to describe their work in the United States as volunteer work at the temples, and to say that they would be performing the work as a service to the deities.

172. The Plaintiffs and other R-1 workers did not undertake their work for Defendants for religious reasons, but worked for Defendants in order to earn wages.

173.    Defendants' agents instructed the Plaintiffs and the R-1 workers to tell Embassy officials that they would not be paid for the work they would perform.

174.    Defendants' agents instructed the Plaintiffs and the other R-1 workers recruited to work at the Robbinsville temple to tell the Embassy staff that they would be doing decorative painting or carving working (nikashi) on stones to be used in the Robbinsville temple.

175.    In reality, the Robbinsville temple workers did not perform such decorative painting or carving work.

176.    The vast majority if not all of the nikashi work for the Robbinsville temple was in fact performed in India, and the stones were shipped to New Jersey already carved.

177.    The Plaintiffs and the R-1 workers were interviewed at the U.S. Embassy in Delhi.  After their visa interviews, the workers returned to their homes to await word about when they would travel to the United States.

178.    Upon being informed that their work in the United States would begin shortly, the workers traveled, again at their own expense, to Ahmedabad, India to prepare for travel to the U.S.

179.    In Ahmedabad, workers were told that they would need to bring bags of materials for the temple to the United States; these bags would be checked in their names at the airport.  While the workers were not told what was in these bags, at least one Plaintiff observed that a bag appeared to contain prescription drugs such as antibiotics.

180.    As described above, throughout and as part of their preparation for going to work in the United States, workers regularly had to travel to the BAPS locations from their hometowns at their own expense.

181.    The costs of travel incurred by the Plaintiffs and other R-1 workers generally ranged from 1500 rupees (approximately $20 USD) to 20,000 rupees (approximately $275) or more for each trip.

### D. Travel to the United States for work at the Robbinsville temple, the Los Angeles temple, the Chicago temple, the Houston temple, and the Atlanta temple.

182.    When it was time for their work in the United States to begin, the Plaintiffs and the R-1 workers flew to the United States from India.

183.    Throughout the recruitment process in India, Defendants' agents maintained possession of the Plaintiffs' and other R-1 workers' passports.  Defendants' agents held some workers' passports for almost a year.

184.    The Defendants' agents held the workers' passports in the course of and with the intent to defraud the United States government about the nature and purpose of the work that the Plaintiffs and R-1 workers would perform in the United States.

185.    Prior to boarding planes in India, Defendants' agents handed the workers their passports and visas, but the workers were allowed to hold onto their passports and visas only for the duration of the flight to the United States and until they passed through Customs in the United States.

186.    After reaching the United States and passing through Customs, representatives of the Defendants again confiscated the Plaintiffs' and other R-1 workers' passports and visas – even before they had left the airport.

187.    The Plaintiffs and the R-1 workers were never able to recover their passports or visas during the entire time they worked for Defendants in the United States.

188. Plaintiffs and the other R-1 workers were transferred to work at the different temple locations based on Defendants' decisions. Plaintiffs and the other R-1 workers could not choose the location at which they wanted to work.

### E. Work, pay, and labor trafficking at the Robbinsville temple

189. This section pertains to the work of the Plaintiffs and other R-1 workers at the Robbinsville temple.

190. Approximately one day after arriving in New Jersey, the Plaintiffs and the R-1 workers began their work at the Robbinsville temple.

191. The work they performed was not decorative stone painting or carving, but was cutting stones, laying stones, removing garbage, road work, dipping stones in chemicals, and other tasks.

192. At times during their employment by the Robbinsville Employer Defendants, Plaintiffs and the R-1 workers wore uniforms that had "BAPS" imprinted on them.

193. There were usually 80-120 workers performing manual labor at the temple, although the number of workers would go down during winter months.   The workers, who lived in crowded trailers provided by Robbinsville Employer Defendants within the temple compound, would be summoned to work each day by a siren.

194. These workers had essentially the same schedule every day while working at the temple.

195. The workers began work each day at 6:30 a.m.

196. At or around 9:00 a.m. each day, they would have a 15-minute break for breakfast.

197. At around 1:00 p.m., the workers would have a 30-minute break for lunch.

198. At or around 4:00 p.m., the workers would have a 15-minute break for tea.

199. The Plaintiffs and the R-1 workers would complete their days of work at or around 7:30 p.m.

200. Around the time when Daylight Savings Time was in effect, the workers' schedule would shift slightly.   However, the length of their workdays remained the same throughout their entire employment.

201. The Plaintiffs and the R-1 workers never received any paystubs or statements showing the dates and hours that they worked.

202. The workers maintained this punishing schedule seven days a week.  They were only rarely given a day off, being allowed only one day off every 30 to 40 days.  They worked outside even during rain or snow.

203. For this work, the Plaintiffs and the R-1 workers were paid approximately 31,000 – 35,000 rupees, currently approximately $425 – $450 USD.  Of this total pay, approximately $50 USD would be paid to the workers in cash in New Jersey.

204. The rest was paid to the Plaintiffs' and the other R-1 workers' bank accounts in India once a month.  The amounts paid in India to the Plaintiffs and the other R-1 workers were approximately 28,500 rupees ($391 USD) to 31,000 rupees ($425 USD) per month; the exact amount varied based upon the exchange rate at the time the monthly $50 cash was paid.

205. Upon information and belief, the Defendant BAPS Swaminarayan Sanstha and/or BAPS India paid these amounts to accounts in India:

      a. so the Plaintiffs and other R-1 workers would not have the financial means to escape from the forced labor at the hands of Defendants;

b. so the Plaintiffs and other R-1 workers would suffer stigma and other reputational harm in India if they tried to escape from the forced labor at the hands of Defendants; and

c. so the Plaintiffs' and other R-1 workers' families would suffer financial harm if the Plaintiffs and other R-1 workers tried to escape from the forced labor at the hands of Defendants.

206. The electronic notifications that workers received on their cellular phones when funds were deposited in their India accounts at least at times referred to the monthly deposits by Defendant BAPS Swaminarayan Sanstha and/or BAPS India as "SALARY."

207. The Plaintiffs and the other R-1 workers were not given the option to receive the rupee portion of their salary in the United States at the time it was earned; their only option was to have monthly payments made to the Indian accounts to which they had no immediate access.

208. It was mandatory that workers provide their Indian bank account information to the staff at the temple in order for them to receive pay.

209. Workers were fined for what the Robbinsville Employer Defendants considered infractions of work rules, resulting in their receiving even lower salaries than the 28,500 to 31,000 rupees monthly.

210. For example, Mukesh Kumar was fined 7,500 rupees ($102 USD; approximately 26% of his monthly salary) when he was observed without a helmet on.

211. In no manner were Plaintiffs and the R-1 workers at the Robbinsville temple volunteers.

212.    The work the Plaintiffs and the R-1 workers performed at the temple was done with the promise, expectation, and receipt of compensation – albeit extremely low compensation – for the services rendered.

213.    Their work was not performed for their personal purposes or pleasure, and their services were not donated.

214.    The Plaintiffs and the R-1 workers were completely dependent on the Defendants and their agents for long periods of time while they were in New Jersey.  The Robbinsville Employer Defendants and their agents exercised significant control over Plaintiffs and the R-1 workers during the time that they traveled to and were in New Jersey.

215.    Even when the Plaintiffs and other R-1 workers were allowed to return to India, Defendants and their agents kept the workers under their control by retaining their passports.  Defendants and their agents also required some workers to make financial guarantees that other workers would return from India to New Jersey to work.  For example, one worker was fined 35,000 rupees (presently $480; more than a month of the workers' meager wages) when a worker he had guaranteed in fact did not return to New Jersey to work.

216.    The Plaintiffs and the R-1 workers were unable to leave the Robbinsville temple, where they lived and where they were under the constant control of temple staff.

217.    The Robbinsville Employer Defendants and their agents concealed, confiscated, and possessed Plaintiffs' and other R-1 workers' passports and visas the entire time they worked at the Robbinsville temple in order to, without lawful authority, maintain and restrict the workers' labor and to force them to work.

218. Workers were threatened that if they talked to people outside of the Robbinsville temple they would be fined or sent home.

219. There are as many as 50 cameras throughout the temple's Robbinsville campus. The screens to view those cameras' recordings are in the main office of the temple. From there, temple staff could watch what was going on throughout the temple premises.

220. There are even cameras outside the trailers in which the Plaintiffs and the R-1 workers live. Cameras would record whenever workers went in or out of the trailers.

221. Some workers were told that if they went outside of the Robbinsville temple complex, the police would arrest them because the workers did not have their passports or visas. In that case, the workers were told, the temple would not be responsible for the workers.

### F. Supervisors and Employers at the Robbinsville Temple

222. This section pertains to the Plaintiffs' and other R-1 workers' work at the Robbinsville temple.

223. The Robbinsville Employer Defendants collectively had the power to establish, and did establish – directly or through their agent(s) – the terms of Plaintiffs' and other R-1 workers' employment.

224. The Robbinsville Employer Defendants, directly or indirectly, determined the rate and method of payment to be paid to Plaintiffs and other R-1 workers. The Defendants collectively had the power to hire and fire Plaintiffs and other R-1 workers, and each exercised that power, whether directly or indirectly through their agent(s).

225. The Robbinsville Employer Defendants collectively maintained employment records for the Plaintiffs and other R-1 workers.

226.    The Robbinsville Employer Defendants, directly or indirectly, managed, supervised, and directed the work Plaintiffs and other R-1 workers completed at the Robbinsville temple.

227.    Plaintiffs and other R-1 workers worked under the daily supervision of Defendants Bharat Patel, Pankaj Patel, and Swami Prasanand.

228.    Defendants Pankaj Patel, Bharat Patel, Kanu Patel, and Swami Prasanand also directed the activities of temple supervisors including Ritesh Bhai, Vishal Bhai, Jignesh Bhai, Chirag Bhai, and Adadh Bhai, who in turn supervised the Plaintiffs and other R-1 workers.

229.    The Robbinsville Employer Defendants, directly or indirectly, had and routinely exercised their power to review and approve the work of Plaintiffs and other R-1 workers.   When the Employer Defendants decided that work was not done correctly or to their satisfaction, the Employer Defendants would communicate their dissatisfaction to Plaintiffs and other R-1 workers.

230.    For example, Swami Prasanand regularly observed the work of the Plaintiffs and other R-1 workers and would deduct wages from a workers' pay if he observed that worker briefly idling, smoking, or otherwise not acting in accordance with temple rules.

231.    Defendant Swami Prasanand also would meet regularly with the Plaintiffs and other R-1 workers and tell them to do good work, to work fast, and to work with attention.

232.    Defendant Bharat Patel regularly oversaw the work of the Plaintiffs and other R-1 workers, correcting their performance and directing individual work tasks.

233.    When Plaintiff Pappu complained to Bharat Patel about the difference between his promised hours and pay and his actual hours and pay, Defendant Patel told Plaintiff Pappu to "be patient" and that he was "serving God."

234.    Defendant Pankaj Patel also oversaw the work of the Plaintiffs and other R-1 workers on a daily basis.

235.    Defendants Kumar Patel, Bharat Patel, Pankaj Patel, and Swami Prasanand, directly or indirectly, directed the Plaintiffs and other R-1 workers as to the manner in which they should perform their work.

236.    Supervisors, including individual Defendants, trained Plaintiffs and other R-1 workers on the method for completing various tasks.

237.    Through the workers' supervisors, the Robbinsville Employer Defendants also held regular meetings, approximately every 10 days, with the Plaintiffs and other R-1 workers to reinforce rules of the employment.  During these meetings, the supervisors would read from a written list of the rules.

238.    Among the rules were prohibitions on visitors, alcohol, and speaking with individuals from outside of the temple.

239.    Workers were told that if they spoke to outside people or if they left the temple premises they would have deductions taken from their wages.

240.    Upon information and belief, Defendants Kumar Patel, Bharat Patel, Pankaj Patel, and Swami Prasanand were each involved in deducting monies from workers' wages when the Employer Defendants believed that the workers violated rules of the workplace.

### G.  Work at the Los Angeles, Chicago, Houston, and Atlanta Temples

*Los Angeles Temple*

241.    At the Los Angeles temple, Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari, and other R-1 workers were generally required by the Los Angeles Employer Defendants to work seven days a week, with only about one day off a month.

242.    For several years, the Los Angeles Employer Defendants required that the R-1 workers lived in the Los Angeles temple. Later, the workers were housed at a hotel nearby in Chino Hills.

243.    The work at the Los Angeles temple was largely similar to other locations, including stone cutting, fitting, and other manual construction labor.

244.    Workers at the Los Angeles temple worked at least eight hours a day, seven days a week during nearly every week.

245.    Workers were paid extremely little during their time working for the Los Angeles Employer Defendants at the Los Angeles temple. For example, Plaintiff Vijendra Singh, who worked at the Los Angeles temple from approximately 2012 to 2013, was paid approximately 14,500 rupees (currently approximately $194 dollars) per month in 2012, and approximately 17,500 rupees (currently approximately $234) in 2013.

246.    Plaintiff Prem Singh worked at the Los Angeles temple with other R-1 workers for three months, from approximately October 2012 to January 2013, during the final stages of construction on the temple. He and other workers stayed at a hotel and had to walk three to four kilometers every day between the temple and the hotel, under

supervision. Other than that, the workers were not allowed to go outside, and were always supervised by the Los Angeles Employer Defendants' supervisors.

247.    The workers at the Los Angeles temple were not allowed to leave the temple compound unescorted, and they could not leave their employment with BAPS.

*Chicago Temple*

248.    At the Chicago temple, Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram and other R-1 workers were generally required by the Chicago Employer Defendants to work seven days a week, with only about one day off a month.

249.    Workers at the Chicago temple worked at least eight hours a day, seven days a week during nearly every week.

250.    Workers were paid extremely little during their time working for the Chicago Employer Defendants at the Chicago temple. For example, Plaintiff Devi Laal, who worked at the Chicago temple from approximately 2003 to 2006, was paid approximately 15,000 rupees (currently approximately $200 dollars) per month. Plaintiff Rama Ram, who worked at the Chicago temple from 2006 to 2009 and again from 2011 to 2015, was paid approximately 14,500 rupees (currently approximately $194 dollars) per month.

251.    When working at the Chicago temple, the Chicago Employer Defendants required workers to sleep on the floor in a big hall in the temple.

252.    The workers at the Chicago temple were not allowed to leave the temple compound unescorted by the Chicago Employer Defendants' agents, and they could not leave their employment with BAPS.

*Houston Temple*

253.    At the Houston temple, Plaintiffs Devi Laal, Vijendra Singh, Rupa Ram, and other R-1 workers were generally required by the Houston Employer Defendants to work seven days a week, with only about one day off a month.

254.    Workers at the Houston temple worked at least eight hours a day, seven days a week during nearly every week.

255.    Workers were paid extremely little during their time working for the Houston Employer Defendants at the Houston temple. For example, upon information and belief, the Houston temple workers were paid approximately 40,000 rupees (about $600 U.S. dollars) per month between 2013 and 2016.

256.    When working at the Houston temple, the Houston Employer Defendants required workers to sleep in a two-story hall that had been divided into small rooms, with several workers living in each room.

257.    The workers at the Houston temple were not allowed to leave the temple compound unescorted by the Houston Employer Defendants' agents, and they could not leave their employment with BAPS.

*Atlanta Temple*

258.    At the Atlanta temple, Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, Khima Ram Rebari and other R-1 workers were generally required by the Atlanta Employer Defendants to work seven days a week, with only about one day off a month.

259.    Workers at the Atlanta temple worked at least eight hours a day, seven days a week during nearly every week.

260.    Workers were paid extremely little during their time working for the Atlanta Employer Defendants at the Atlanta temple. For example, in 2006, Plaintiff Khimaram Rabari was paid approximately 15,000 rupees (approximately $335 U.S. dollars) per month.

261.    When working at the Atlanta temple, the Atlanta Employer Defendants required workers to sleep in a large hall that had been divided into small rooms, with several workers living in each room.

262.    The workers at the Atlanta temple were not allowed to leave the temple compound unescorted by the Atlanta Employer Defendants' agents, and they could not leave their employment with BAPS.

## H. Further allegations

263.    Upon information and belief, the Employer Defendants failed to post the notices required by the FLSA. The Robbinsville Employer Defendants failed to post the notices required by the New Jersey Wage & Hour and Wage Payment laws. The Los Angeles Employer Defendants failed to post the notices required by the California Labor Code. The Chicago Employer Defendants failed to post the notices required by the Illinois Minimum Wage Law.

264.    The Employer Defendants, through their wrongful and illegal conduct, prevented Plaintiffs and other R-1 workers from asserting their legal claims while the Employer Defendants employed Plaintiffs. As a result, the statute of limitations for Plaintiffs' FLSA claims, New Jersey Wage & Hour Law and Wage Payment Law claims, California Labor Code claims, Illinois Minimum Wage Law claims, and for Plaintiffs' other claims should

be equitably tolled to allow Plaintiffs to recover for legal violations during their entire period of employment.

265.    The Employer Defendants' failure to pay Plaintiffs and other R-1 workers as required by the FLSA was willful and intentional. The Robbinsville Employer Defendants' failure to pay Plaintiffs and other R-1 workers as required by the New Jersey Wage & Hour and Wage Payment laws was willful and intentional. The Los Angeles Employer Defendants' failure to pay Plaintiffs and other R-1 workers as required by the California Labor Code was willful and intentional. The Chicago Employer Defendants' failure to pay Plaintiffs and other R-1 workers as required by, and the Illinois Minimum Wage Law was willful and intentional.

266.    The Employer Defendants knew that their failure to properly pay Plaintiffs and the other R-1 workers was prohibited by the FLSA, or they showed willful disregard as to whether their actions were so prohibited. The Robbinsville Employer Defendants knew that their failure to properly pay Plaintiffs and the other R-1 workers was prohibited by the the New Jersey Wage & Hour and Wage Payment laws, or they showed willful disregard as to whether their actions were so prohibited. The Los Angeles Employer Defendants knew that their failure to properly pay Plaintiffs and the other R-1 workers was prohibited by the the California Labor Code, or they showed willful disregard as to whether their actions were so prohibited. The Chicago Employer Defendants knew that their failure to properly pay Plaintiffs and the other R-1 workers was prohibited by the the Illinois Minimum Wage Law, or they showed willful disregard as to whether their actions were so prohibited.

267. During the course of their employment, the Plaintiffs and other R-1 workers handled, sold, or otherwise worked on items that were produced for movement in interstate commerce.

268. Defendants knowingly benefited financially and by receiving anything of value (including, but not limited to, Plaintiffs' and other R-1 workers' labor, the construction and resulting added value of the temple, donations and other contributions, and financial profits) from participating in a venture Defendants knew or should have known engaged in violations of Title 18, Chapter 77 of the United States Code.

269. Defendants intentionally recruited people from the Scheduled Castes, also known as Dalits, from the Scheduled Tribes, also known as Adivasi, and people from other marginalized groups based on their ancestry and ethnicity because Defendants knew these workers suffered from rampant discrimination and therefore had very limited economic opportunities, access to services, and government protection in India. Defendants essentially weaponized India's caste system, using it to coerce the Plaintiffs and other R-1 workers to work for substandard pay under abysmal conditions in New Jersey.

270. Defendants' agents at the BAPS India temple organization are still holding the passports of workers who returned to India, even now.   Plaintiff Devi Laal, for example, was told that the India temple would need to hold onto his passport until the visa for work at the Robbinsville temple expires in 2022.

271. By continuing to hold workers' passports after they returned to India, Defendants' agents prevented Plaintiffs from securing other work opportunities outside of India or from receiving humanitarian or other visas from other nations.

272.    Most of the work Plaintiffs and other R-1 workers did at the temple was very dangerous.  They had to manage stones that weighed several tons, they were exposed to and breathed dust from cut stones and chemical solutions used to soak the stones, and they were frequently exhausted by the long hours with almost no days off.

273.    One R-1 worker, Mohan Lal, died while he was subjected to forced labor at the Robbinsville temple.

274.    Upon information and belief, at least three other workers—Puran Singh, Bachchu Singh, and Magi Lal—died shortly after they returned to India.

275.    Defendants undertook all the actions and omissions alleged above either directly or through their agents who were authorized to undertake such actions and omissions.

## V.    FLSA Collective Allegations

276.    Plaintiffs bring their FLSA claims on behalf of themselves and: (a) those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required wages at the Robbinsville temple between May 11, 2018 and the date of preliminary approval of the opt-in class; and (b) those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required wages at the Los Angeles, Chicago, Houston, and Atlanta temples between October 22, 2018 and the date of preliminary approval of the opt-in class.

277.    Alternatively, if the Court equitably tolls the FLSA statute of limitations, Plaintiffs bring their FLSA claims on behalf of themselves and: (a) those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required wages at the Robbinsville temple between 2002 and the date of preliminary approval of the opt-in class; and (b) those individuals who may opt into this action pursuant to 29

Page 51 of 86

U.S.C. § 216(b) and who were not paid required wages at the Los Angeles, Chicago, Houston, and Atlanta temples between the start of construction of those respective temples and the date of preliminary approval of the opt-in class.

278.    Plaintiffs and other R-1 workers were subject to the same policies and practices of the Employer Defendants.

279.    All of the Plaintiffs and other R-1 workers worked at BAPS's Robbinsville, New Jersey location.

280.    Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari and other R-1 workers worked at BAPS's Chino Hills, California location.

281.    Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram and other R-1 workers worked at BAPS's Barrett, Illinois location.

282.    Plaintiffs Devi Laal, Vijendra Singh, Rupa Ram and other R-1 workers worked at BAPS's Stafford, Texas location.

283.    Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, Khima Ram Rebari and other R-1 workers worked at BAPS's Lilburn, Georgia location.

284.    Common proof applicable to Plaintiffs and the R-1 visa workers in all of these locations will show that the Employer Defendants failed to properly pay wages to Plaintiffs and other R-1 workers.

285.    Plaintiffs are currently unaware of the identities of all the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from the Employer Defendants' records.  The Employer Defendants therefore should be

required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who were R-1 workers for the Employer Defendants at the Robbinsville, Los Angeles, Chicago, Houston, and Atlanta temples between 2002 and the present.

## VI.    Rule 23 Class Allegations

286.    While Plaintiffs raise claims related to five different temples, the challenged practices originated with the common recruitment of workers from marginalized castes and tribes in India to work in the United States for long hours and illegally low wages. Many of the same Defendants were involved in violations in all of the locations, and many of the Plaintiffs and other R-1 workers worked in multiple locations.

287.    The Plaintiffs bring their TVPA, RICO, and Section 1981 claims for damages arising out of their employment at the Robbinsville temple, and their New Jersey state law claims – the First, Second, Fourth, Fifth, Eighth, Ninth, and Tenth Causes of Action– on behalf of themselves and a class of persons ("the New Jersey Class") consisting of:

> All individuals who worked in non-supervisory roles at the Robbinsville temple as construction and/or stone workers under R-1 visas between May 11, 2011 and the present.

288.    Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, and Khima Ram Rebari bring their TVPA, RICO, and Section 1981 claims for damages arising out of their work at the Los Angeles temple, and their California law claims – the First, Second, Sixth, Eighth, Ninth, and Tenth Causes of Action – on behalf of themselves and a class of persons ("the California Class") consisting of

> All individuals who worked in non-supervisory roles at the
> Los Angeles temple as construction and/or stone workers
> under R-1 visas from the start of construction in or around
> September 2005 until the present.

289.    Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, and Khima Ram Rebari bring their TVPA, RICO, and Section 1981 claims for damages arising out of their work at the Atlanta temple, and their Georgia law claims – the First, Second, Eighth, Ninth, and Tenth Causes of Action – on behalf of themselves and a class of persons ("the Georgia Class") consisting of

> All individuals who worked in non-supervisory roles at the
> Los Angeles temple as construction and/or stone workers
> under R-1 visas from the start of construction in or around
> 2005 until the present.

290.    Plaintiffs Devi Laal, Vijendra Singh, and Rupa Ram bring their TVPA, RICO, and Section 1981 claims for damages arising out of their work at the Houston temple, and their Texas law claims – the First, Second, Eighth, Ninth, and Tenth Causes of Action – on behalf of themselves and a class of persons ("the Texas Class") consisting of

> All individuals who worked in non-supervisory roles at the
> Houston temple as construction and/or stone workers under
> R-1 visas from the start of construction in or around 2002
> until the present.

291.    Plaintiffs Devi Laal, Lauxmi Narain, and Rama Ram, bring their TVPA, RICO, and Section 1981 claims for damages arising out of their work at the Chicago temple, and their Illinois law claims – the First, Second, Seventh, Eighth, Ninth, and Tenth Causes of Action – on behalf of themselves and a class of persons ("the Illinois Class") consisting of

> All individuals who worked in non-supervisory roles at the Chicago temple as construction and/or stone workers under R-1 visas from the start of construction in or around 2002 until the present.

292.    Excluded from the classes described above (collectively, the "Classes") are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the class period has had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Classes.

### *Numerosity*

293.    Upon information and belief, there are at least 200 individuals who work or have worked at the Robbinsville temple who would be members of the New Jersey Class in this action.

294.    Upon information and belief, there are at least 100 individuals who work or have worked at the Los Angeles temple who would be members of the California Class in this action.

295.    Upon information and belief, there are at least 100 individuals who work or have worked at the Houston temple who would be members of the Texas Class in this action.

296.    Upon information and belief, there are at least 100 individuals who work or have worked at the Atlanta temple who would be members of the Georgia Class in this action.

297.    Upon information and belief, there are at least 100 individuals who work or have worked at the Chicago temple who would be members of the Illinois Class in this action.

298.    The members of the Classes are sufficiently numerous that joinder of all members is impractical.

299.    Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Classes, but this information is readily ascertainable from Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked as construction and/or stone workers under R-1 visas at the respective temples during the time periods set forth in the class definitions.

*Existence and Predominance of Common Questions*

300.    Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual Class members.

301.    Common questions as to all Classes (the New Jersey Class, California Class, Illinois Class, Texas Class, and Georgia Class), include:

   a)       Whether Defendants knowingly recruited and obtained Plaintiffs' and the R-1 workers' labor or services by means of (i) physical restraint; (ii) threats of physical restraint; (iii) serious harm; (iv) threats of serious harm; (v) abuse of legal process; (vi) threatened abuse of legal process; and/or (vii) a scheme, plan, or pattern intended to cause Plaintiffs and the R-1 workers to believe that, if they did not perform such labor or services, they or another person would suffer serious harm or physical restraint;

   b)       Whether Defendants knowingly recruited, transported, harbored, provided, and/or obtained the Plaintiffs and the R-1 workers so as to obtain their labor and services by the means described herein;

   c)       Whether Defendants conspired to commit the acts described herein;

d)      Whether Defendants concealed, removed, confiscated, and/or possessed Plaintiffs' and other class members' passports in the course of committing and/or with the intent (i) to commit the acts described in paragraphs (d) and (e), *supra*, and/or (ii) to knowingly and intentionally defraud the United States government to recruit, solicit and hire Plaintiffs and other R-1 workers outside the United States;

e)      Whether Defendants were perpetrators of the acts described herein;

f)      Whether Defendants knowingly benefitted, financially or by receiving anything of value from participating in a venture Defendants knew or should have known engaged in the acts described herein*;*

g)      Whether Defendants intentionally discriminated against Plaintiffs on the basis of ancestry and ethnicity, i.e. caste and tribe, in violation of Section 1981;

h)      The nature and extent of class-wide injury for each state Class, and the measure of damages for those injuries.

302.    For the New Jersey Class, these common questions also include:

a)      Whether the Employer Defendants paid Plaintiffs and the R-1 workers the minimum wage and overtime for all hours worked as required by the New Jersey Wage & Hour and Wage Payment laws; whether the Employer Defendants paid Plaintiffs and the R-1 workers at least once each calendar month; and whether the Employer Defendants improperly withheld or diverted a portion of Plaintiffs and the R-1 workers' wages;

b)      Whether the Employer Defendants had a policy of failing to pay Plaintiffs and the R-1 workers as required by New Jersey law; and

c)      Whether the Employer Defendants' policy of failing to pay Plaintiffs and the R-1 workers was willful or with reckless regard of New Jersey law;

d)      Whether the Employer Defendants received a benefit from the Plaintiffs and the R-1 workers by having the workers perform stonework and/or construction work at Defendants' properties, and whether Defendants' retention of that benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust under the common law of New Jersey;

e)      Whether (1) the Plaintiffs and the other R-1 workers performed stonework and/or construction work services in good faith for Defendants; (2) whether these services were accepted by the Defendants; (3) whether Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and/or construction work services that they performed; and (4) whether the benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services; and

f)      The nature and extent of class-wide injury and the measure of damages for those injuries.

303.    For the California Class, these common questions also include:

a) Whether the Defendants paid Plaintiffs and the R-1 workers the minimum wage and overtime for all hours worked as required by the California Labor Code, General Minimum Wage Order, and Wage Order 16;

b) Whether the Employer Defendants had a policy of failing to pay Plaintiffs and the R-1 workers as required by California law; and

c) Whether the Employer Defendants' policy of failing to pay Plaintiffs and the R-1 workers was willful or with reckless regard of California law;

d) Whether Defendants received a benefit from the Plaintiffs and the R-1 workers by having the workers perform stonework and/or construction work at Defendants' properties, and whether Defendants' retention of that benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust under the common law of California;

e) Whether (1) the Plaintiffs and the other R-1 workers performed stonework and/or construction work services in good faith for Defendants; (2) whether these services were accepted by the Defendants; (3) whether Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and/or construction work services that they performed; and (4) whether the benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services; and

f) The nature and extent of class-wide injury and the measure of damages for those injuries.

304.    For the Illinois Class, these common questions also include:

a)    Whether the Defendants paid Plaintiffs and the R-1 workers the minimum wage and overtime for all hours worked as required by the Illinois Minimum Wage Law;

b)    Whether the Employer Defendants had a policy of failing to pay Plaintiffs and the R-1 workers as required by law; and

c)    Whether the Employer Defendants' policy of failing to pay Plaintiffs and the R-1 workers was willful or with reckless regard of the law;

d)    Whether Defendants received a benefit from the Plaintiffs and the R-1 workers by having the workers perform stonework and/or construction work at Defendants' properties, and whether Defendants' retention of that benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust;

e)    Whether (1) the Plaintiffs and the other R-1 workers performed stonework and/or construction work services in good faith for Defendants; (2) whether these services were accepted by the Defendants; (3) whether Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and/or construction work services that they performed; and (4) whether the benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services; and

f) The nature and extent of class-wide injury and the measure of damages for those injuries.

305. For the Georgia Class, these common questions also include:

a) Whether Defendants received a benefit from the Plaintiffs and the R-1 workers by having the workers perform stonework and/or construction work at Defendants' properties, and whether Defendants' retention of that benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust under Georgia common law;

b) Whether (1) the Plaintiffs and the other R-1 workers performed stonework and/or construction work services in good faith for Defendants; (2) whether these services were accepted by the Defendants; (3) whether Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and/or construction work services that they performed; and (4) whether the benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services; and

c) The nature and extent of class-wide injury and the measure of damages for those injuries.

306. For the Texas Class, these common questions also include:

a) Whether Defendants received a benefit from the Plaintiffs and the R-1 workers by having the workers perform stonework and/or construction work at Defendants' properties, and whether Defendants' retention of that

benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust under Texas common law;

b)      Whether (1) the Plaintiffs and the other R-1 workers performed stonework and/or construction work services in good faith for Defendants; (2) whether these services were accepted by the Defendants; (3) whether Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and/or construction work services that they performed; and (4) whether the benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services; and

c)      The nature and extent of class-wide injury and the measure of damages for those injuries.

### *Typicality*

307.    Members of the proposed Classes have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

308.    Defendants subjected Plaintiffs and the proposed members of the Classes to the same coercive rules and practices that constituted violations of the TVPA.

309.    Defendants, through their enterprises, subjected Plaintiffs and the proposed members of the Classes to the same pattern of racketeering activities that constituted violations of the RICO.

310.    Defendants subjected Plaintiffs and the proposed members of the Classes to the same intentional discrimination that constituted violations of Section 1981.

311.    Plaintiffs and proposed class members suffered similar types of damages.

312.    Plaintiffs' claims are typical of the claims of the Classes because, among other things, Plaintiffs were employees who worked for Defendants and suffered the same violations as the proposed members of the Classes.

313.    Plaintiffs' interests are co-extensive with the interests of the members of the Classes; Plaintiffs have no interest adverse to the members of the Classes.

314.    Plaintiffs and the proposed New Jersey Class members have the same statutory rights under the New Jersey Wage & Hour and New Jersey Wage Payment laws, and are all non-exempt employees within the meaning of the New Jersey Wage & Hour and Wage Payment laws. Plaintiffs and the proposed New Jersey Class members also have the same statutory rights under Section 1981. And they all performed the same type of work under the same circumstances giving rise to the same claims for unjust enrichment and quantum meruit under New Jersey common law.

315.    Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari, and the proposed California Class members have the same statutory rights under the California Labor Code, General Minimum Wage Order, and Wage Order 16, and are all non-exempt employees within the meaning of those laws and Orders. Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh and the proposed California Class members also have the same statutory rights under Section 1981. And they all performed the same type of work under the same circumstances giving rise to the same claims for unjust enrichment and quantum meruit under California common law.

316.    Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram, and the proposed Illinois Class members have the same statutory rights under the Illinois Minimum Wage Law, and are all non-exempt employees within the meaning of that law. Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram and the proposed Illinois Class members also have the same statutory rights under Section 1981. And they all performed the same type of work under the same circumstances giving rise to the same claims for unjust enrichment and quantum meruit under Illinois common law.

317.    Plaintiffs Chhail Wiharee, Rama Ram, Vijendra Singh, Ramesh Kumar, Deva Ram, Khima Ram Rebari, and the proposed Georgia Class members have the same statutory rights under Section 1981, and performed the same type of work under the same circumstances giving rise to the same claims for unjust enrichment and quantum meruit under Georgia common law.

318.    Plaintiffs Devi Laal, Vijendra Singh, Rupa Ram, and the proposed Texas Class members have the same statutory rights under Section 1981, and performed the same type of work under the same circumstances giving rise to the same claims for unjust enrichment and quantum meruit under Georgia common law.

### *Adequacy*

319.    Plaintiffs will fairly and adequately represent the interests of the members of the Classes.   Their interests do not conflict with the interests of the members of the Classes they seek to represent.

320.    Plaintiffs understand that, as class representatives, they assume responsibilities to the Classes to represent their interests fairly and adequately.

321.    Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters.  There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

*Superiority*

322.    A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

323.    The damages suffered by each individual member of the Classes may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual prosecution of the litigation necessitated by Defendants' conduct.

324.    Further, it would be difficult for members of the Classes to obtain individual redress effectively for the wrongs done to them.   If individual actions were to be brought by each member of the Classes, the result would be a multiplicity of actions, creating hardships for members of the Classes, the Court, and the Defendants.

325.    The members of the Classes are indigent foreign nationals and workers who lack the means and resources to secure individual legal assistance, have virtually no command of the English language or familiarity with the United States legal system, and are particularly unlikely to be aware of their rights to prosecute these claims.

326.    Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

327.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

328.    This case does not present individualized factual or legal issues which would render a class action difficult.

329.    In the alternative, the Classes may be certified because: (a)  the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual  members of the Classes, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## VII.    Causes of Action

First Cause of Action
The Trafficking Victims Protection Act ("TVPA")
(Against All Defendants)
(On Behalf of Plaintiffs and the New Jersey Class, California Class, Illinois Class,
Texas Class, and Georgia Class)

330.    The Plaintiffs and other R-1 workers reallege and incorporate by reference the foregoing allegations as if set forth fully here.

331.    This Cause of Action sets forth claims by Plaintiffs and the R-1 workers against all Defendants under the civil remedies provision of the TVPA, 18 U.S.C. § 1595, in that

    a.   Plaintiffs and other R-1 workers are victims of violations of the following provisions of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1589, 1590, 1592(a), and 1597(a);

    b.   Defendants were perpetrators of the foregoing violations; and

    c.   Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture Defendants knew or should have known engaged in the foregoing violations.

332.    Defendants, directly or through their agents, knowingly recruited and obtained Plaintiffs' and the R-1 workers' labor or services.

333.    Defendants, directly or through their agents, attempted to and did subject Plaintiffs and the R-1 workers to forced labor in violation of 18 U.S.C. § 1589.

334.    In violation of 18 U.S.C. § 1589(1)-(4), Defendants, directly or through their agents, knowingly recruited and obtained the labor or services of Plaintiffs and the R-1 workers by means of:

    a.   Physical restraint;

    b.   Threats of physical restraint;

    c.   Serious harm;

    d.   Threats of serious harm;

    e.   Abuse of legal process;

    f.   Threatened abuse of legal process; and/or

    g.   A scheme, plan, or pattern intended to cause Plaintiffs and the R-1 workers to believe that, if they did not perform such labor or services, they or another person would suffer serious harm or physical restraint.

335.     Defendants' scheme to, *inter alia*, (a) isolate Plaintiffs and the R-1 workers, (b) coerce them to live and work in conditions causing psychological deterioration and harm, (c) limit their outside contacts, (d) cause financial harm by reducing their wage payments to their families in India if they stepped unaccompanied out of the Defendants' compound or did not abide by Defendants' draconian rules, and (e) cause reputational harm by threatening financial harm to their families was designed to convince Plaintiffs and the R-1 workers that they would suffer serious harm if they were to leave their work and the temples.  Defendants' recruitment of Plaintiffs and other R-1 workers from the Scheduled Castes, also known as Dalit, the Scheduled Tribes, also known as Adivasi, and other marginalized communities in India exacerbated the serious harm they reasonably believed they would suffer if they left their employment at the temples.

336.     In violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 set forth above, Defendants, directly or through their agents, knowingly recruited, transported, harbored and/or obtained the Plaintiffs and the R-1 workers for labor or services in furtherance of the Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:

    a.  forced labor, violating 18 U.S.C. § 1589;

    b.  removing, confiscating, or possessing Plaintiffs' and other R-1 workers' passports and other immigration documents in the course of, or with the intent to violate 18 U.S.C. §1589, violating 18 U.S.C. § 1592(a);

    c.  attempting to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(a); and

    d.  conspiring to violate 18 U.S.C. §§ 1589 and 1592, thereby violating 18

        U.S.C. § 1594(b).

337.    In violation of 18 U.S.C. § 1592(a), Defendants, directly or through their agents, concealed, removed, confiscated, and/or possessed Plaintiffs' and other R-1 workers' passports and other immigration documents in the course of violating and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590.

338.    In violation of 18 U.S.C. § 1594(b), Defendants, directly or through their agents, conspired with each other to violate 18 U.S.C. §§ 1589 and 1592.

339.    In violation of 18 U.S.C. § 1597(a), Defendants concealed, removed, confiscated, and possessed Plaintiffs' and other R-1 workers' passports and immigration documents in the course of committing fraud in foreign labor contracting.  *See* 18 U.S.C. § 1351(a). Specifically, Defendants directly or through their agents concealed, removed, confiscated, and possessed Plaintiffs' and the R-1 workers' passports and immigration documents in the course of knowingly and intentionally defrauding the United States government by falsely claiming Plaintiffs and the R-1 workers would be volunteers.

340.    As a proximate result of the conduct of Defendants, Plaintiffs and the R-1 workers have suffered financial and other damages.

341.    Under the TVPA, Plaintiffs and the R-1 workers are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including but not limited to:

        a.    compensation at the prevailing wage rate including all applicable

              overtime wages for the work done while employed at Defendants;

              and

b.    other compensatory damages; and

c.    compensation for all moneys paid during the recruitment process and in order to come to the United States to work, including travel expenses in India; and

d.    punitive damages; and

e.    attorneys' and experts' fees and costs as authorized by 18 U.S.C. § 1595.

<u>Second Cause of Action</u>
<u>Racketeer Influenced and Corrupt Organizations Act ("RICO")</u>
<u>(Against All Defendants)</u>
<u>(On Behalf of Plaintiffs and the New Jersey Class, California Class, Illinois Class, Texas Class, and Georgia Class)</u>

342.    The Plaintiffs and other R-1 workers reallege and incorporate by reference the foregoing allegations as if set forth fully here.

343.    This Count sets for claims by Plaintiffs and other Class members against all Defendants for damages resulting from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.

344.    Each Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

345.    Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

346.    RICO Enterprises I and II (collectively, "the New Jersey RICO Enterprises"), as defined above, are association-in-fact enterprises with the common purpose to recruit, contract, transport, and employ foreign workers to work in the construction of the BAPS Robbinsville temple.

347.    RICO Enterprise III, as defined above, is an association-in-fact enterprise with the common purpose to recruit, contract, transport, and employ foreign workers to work in the construction of the BAPS Los Angeles, BAPS Houston, BAPS Chicago, and BAPS Atlanta temples.

348.    RICO Enterprise IV, as defined above, is a legal entity enterprise with the common with the common purpose to recruit, contract, transport, and employ foreign workers to work in the construction of the BAPS Robbinsville, BAPS Los Angeles, BAPS Houston, BAPS Chicago, and BAPS Atlanta temples.

349.    The RICO Enterprises are engaged in interstate commerce in that their activities and transactions related to the international and interstate movement of workers and construction materials.

350.    The RICO Enterprises affect interstate commerce and frequently require travel and communications across state and international lines.

351.    The RICO Enterprises function as continuing units.

352.    The Defendants conducted or participated in—or conspired to conduct or participate in—the affairs of the RICO Enterprises, through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and/or 18 U.S.C. § 1962(d), related by their common purpose.

353.    Specifically, the Defendants conducted or participated in—or conspired to conduct and/or participate in—the affairs of the RICO Enterprises by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

    a.  Mail fraud in violation of 18 U.S.C. § 1341;

    b.  Wire fraud in violation of 18 U.S.C. § 1343;

    c.   Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

    d.   Forced labor in violation of 18 U.S.C. § 1589; and

    e.   Trafficking for the purpose of forced labor, in violation of 18 U.S.C. § 1590(a).

*Predicate Acts*

Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343

354.    As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprises, made and/or conspired to make material misrepresentations to the U.S. government regarding the nature of Plaintiffs' and other R-1 workers' work, the hours they would work, and the wages they would receive.

355.    As set forth in the preceding paragraphs, the Defendants, though the RICO Enterprises, used and/or conspired to use the mails and wire communications, including communications via telephone, fax, internet, and/or email, on numerous occasions to further these fraudulent schemes.

356.    These willful, knowing, and intentional acts constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

Fraud in Foreign Labor Contracting: 18 U.S.C. § 1351

357.    As set forth in the preceding paragraphs, the Defendants, through the RICO Enterprises, knowingly and with intent to defraud did and/or conspired to recruit, solicit, and hire Plaintiffs outside the United States, for the purpose of employment in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding the nature of Plaintiffs' and other R-1 workers' work, the hours they would work, and the wages they would receive.

Page 72 of 86

358.    These willful, knowing, and intentional acts constitute fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

Forced Labor: 18 U.S.C. § 1589

359.    As set forth in the preceding paragraphs, the Defendants, through the respective RICO Enterprises, did and/or conspired to knowingly provide and/or obtain Plaintiffs' and other R-1 workers' labor or services, or attempted to do so, by means of:

   a.  Physical restraint;

   b.  Threats of physical restraint;

   c.   Serious harm;

   d.  Threats of serious harm;

   e.  Abuse of legal process;

   f.  Threatened abuse of legal process; and/or

   g.  A scheme, plan, or pattern intended to cause Plaintiffs and the R-1 workers to believe that, if they did not perform such labor or services, they or another person would suffer serious harm or physical restraint.

360.    These knowing acts constituted forced labor, in violation of 18 U.S.C. § 1589.

Trafficking with Respect to Forced Labor: 18 U.S.C. § 1590(a)

361.    As set forth in the preceding paragraphs, Defendants, through the respective RICO Enterprises, did and/or conspired to knowingly recruit, transport, harbor, and/or obtain the Plaintiffs and other R-1 workers for labor or services in furtherance of the Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:

   a.  forced labor, violating 18 U.S.C. § 1589;

    b.   removing, confiscating, or possessing Plaintiffs' and other R-1 workers' passports and other immigration documents in the course of, or with the intent to violate 18 U.S.C. §1589, violating 18 U.S.C. § 1592(a); and

    c.   attempting to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(a); and

    d.   conspiring to violate 18 U.S.C. §§ 1589 and 1592, thereby violating 18 U.S.C. § 1594(b).

362. These knowing acts constituted trafficking with respect to forced labor, in violation of 18 U.S.C. § 1590(a).

*Pattern of Related Racketeering Acts*

363. The Defendants engaged in the racketeering activity described in this claim repeatedly in 2018 through 2021.

364. The Defendants, through the RICO Enterprises, rely on the racketeering acts described in this Amended Complaint to conduct their regular business activities.

365. The Defendants racketeering acts have or had similar purposes: to minimize costs by way of (a) the fraud Defendants committed in the contracting, hiring, and employment of Plaintiffs and other R-1 workers; and (b) the forcing Plaintiffs and other R-1 workers to work for sub-minimum and illegally-low wages.

366. Each of the Defendants' acts yielded similar results and caused similar injuries to Plaintiffs and other R-1 workers, including underpayment of wages.

367. As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the Defendants and their agents.

368.    As set forth in the preceding paragraphs, the RICO Defendants, through the RICO

Enterprises, directed their racketeering activities at similar individuals and entities:

Plaintiff and other R-1 workers, and federal and state government agencies.

369.    The RICO Defendants' acts have or had similar methods of commission, such as

common recruitment and visa procurement tactics, consistent practices with respect to

living and working conditions and policies with respect to Plaintiff and other R-1

workers.

### *Injury and Remedies*

370.    As a direct and proximate result of the Defendants' willful, knowing, and

intentional acts discussed in this section, Plaintiffs and other R-1 workers have suffered

injuries to their property, including but not limited to the difference between the wages

they earned and what they would have earned if Defendants had not fraudulently

misclassified them as religious volunteers and forced them to work for sub-minimum

wages, and other pecuniary losses and/or losses to real or personal property.

371.    Plaintiffs and other R-1 workers are entitled to an award of damages in an amount

to be determined at trial, including but not limited to:

      a.   compensation for their injuries to their property;

      b.   trebling of the damages set forth in subparagraph (a), *supra*; and

      c.   attorneys' and experts' fees and costs associated with this action, as

         authorized by 18 U.S.C. § 1964(c).

Third Cause of Action
Fair Labor Standards Act (Minimum Wage & Overtime)
(Against the Employer Defendants)
(On Behalf of Plaintiffs and the FLSA Collective)

372.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

373.    The Employer Defendants willfully and intentionally failed to pay the federal minimum wage to Plaintiffs and to the other R-1 workers who opt into this action for every hour that they worked between 2002 and the present.

374.    The Employer Defendants' failure to pay the minimum wage violates the Fair Labor Standards Act, 29 U.S.C. § 206(a) and its implementing regulations.

375.    The Employer Defendants also willfully and intentionally failed to pay Plaintiffs and the other R-1 workers who opt into this action overtime at a rate of at least one-and-a-half times the legally-required wage for every hour they worked above forty (40) hours in a work week between 2002 and the present.

376.    This failure violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

377.    The Employer Defendants also violated the FLSA by failing to keep records as required by statute, 29 U.S.C. § 211(c).

378.    The Plaintiffs and the other R-1 workers who chose to opt into this action are therefore entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of the Employer Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

379.    The Plaintiffs and the other R-1 workers who opt into this action also seek, and are entitled to, the costs of Court and the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

Fourth Cause of Action
New Jersey Wage & Hour Law Violations, N.J.S.A. 34:11-56a et seq.
(as amended on August 6, 2019, S1790)
(Minimum Wage and Overtime)
(Against the Robbinsville Employer Defendants)
(On Behalf of Plaintiffs and the New Jersey Class)

380.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

381.    The Robbinsville Employer Defendants violated Plaintiffs' and the other R-1 workers' rights by (i) failing to pay them overtime compensation at rates not less than one and one-half of the legally-required rate of pay for each hour worked in excess of forty hours in a work week, and (ii) failing to pay them at least the legally-mandated New Jersey state minimum wage for every hour worked between May 11, 2011 and the present.

382.    As a result of the Robbinsville Employer Defendants' violations of the NJWHL, Plaintiffs and the other R-1 workers have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

Fifth Cause of Action
New Jersey Wage Payment Law Violations, N.J.S.A. 34:11-4.4 et seq.
(as amended on August 6, 2019, S1790)
(Illegal Deductions)
(Against the Robbinsville Employer Defendants)
(On Behalf of Plaintiffs and the New Jersey Class)

383.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

384.    Under New Jersey Wage Payment Law, no employer may withhold or divert any portion of an employee's wages. N.J.S.A. 34:11-4.4 et seq.

385.    The Robbinsville Employer Defendants illegally misappropriated, withheld, and diverted portions the wages of Plaintiffs and other R-1 workers who worked at the Robbinsville temple.

386.    As a result of the Robbinsville Employer Defendants' violations of the NJWPL, Plaintiffs and other  R-1 workers have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

Sixth Cause of Action
California Wage & Hour Violations, Cal. Lab. Code §§ 510(a) and 1197, General
Minimum Wage Order, Wage Order No. 16-2001
(Minimum Wage and Overtime)
(Against the Los Angeles Employer Defendants)
(On Behalf of Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra,
Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari and the
California Class)

387.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

388.    The Los Angeles Employer Defendants violated the California wage & hour law rights of Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra,

Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari, and the other R-1 workers who labored at the Los Angeles temple by (i) failing to pay them overtime compensation at rates not less than one and one-half of the legally-required rate of pay for each hour worked in excess of forty hours in a work week, in violation of Cal. Lab. Code § 510(a), and (ii) failing to pay them at least the legally-mandated California state minimum wage for every hour worked between September 2005 and the present, in violation of Cal. Lab. Code § 1197, the state's General Minimum Wage Order, Cal. Code Regs. tit. 8, § 11010, as amended, and Wage Order No. 16-2001, Cal. Code Regs. tit. 8 § 11160 ("Wage Order 16"), as amended.

389.    As a result of the Los Angeles Employer Defendants' violations of the California Labor Code, the General Minimum Wage Order, and Wage Order 16, Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari, and the other R-1 workers who labored at the Los Angeles temple have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to Cal. Lab. Code §§ 1194, 1194.2, and 218.6.


Seventh Cause of Action
Illinois Minimum Wage Law Violations, 820 ILCS § 105/1 *et seq.*
(Minimum Wage and Overtime)
(Against the Chicago Employer Defendants)
(On Behalf of Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram and the Illinois Class)

390.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

391.    The Chicago Employer Defendants violated the Illinois wage & hour law rights of Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram, and the other R-1 workers who labored at the Chicago temple by (i) failing to pay them overtime compensation at rates not less than one and one-half of the legally-required rate of pay for each hour worked in excess of forty hours in a work week, in violation of 820 ILCS § 105/4a and its accompanying regulations, and (ii) failing to pay them at least the legally-mandated Illinois state minimum wage for every hour worked between 2002 and the present, in violation of 820 ILCS § 105/4 and its accompanying regulations.

392.    As a result of the Chicago Employer Defendants' violations of Illinois wage & hour law, Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram, and the other R-1 workers who worked at the Chicago temple have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to 820 ILCS § 105/12.

Eighth Cause of Action
Ancestry- and Ethnicity-Based Discrimination (i.e. Caste-Based Discrimination)
in Violation of Section 1981
(Against All Defendants)
(On Behalf of Plaintiffs and the New Jersey Class, California Class, Illinois Class,
Texas Class, and Georgia Class)

393.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

394.    Plaintiffs and the other R-1 workers are members of the Scheduled Castes, also known as Dalit, the Scheduled Tribes, also known as Adivasi, or other marginalized groups in India. In India, caste and tribe is based on ancestry and ethnic characteristics.

395.    Defendants, as described in the foregoing allegations, intentionally and repeatedly discriminated against Plaintiffs and other R-1 workers on the basis of their ancestry and ethnic characteristics, i.e. on the basis of their status as members of marginalized castes and tribes in India.

396.    Defendants' intentional ancestry and ethnicity discrimination against Plaintiffs impaired Plaintiffs' ability to make and enforce contracts within the meaning of Section 1981, insofar as it interfered with their ability to enforce the terms of their employment contracts and/or to modify or terminate their employment contracts.

397.    As a result of Defendants' illegal actions, Plaintiffs and other R-1 workers have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages.

398.    Defendants' actions were malicious, willful, and wanton violations of Section 1981 for which Plaintiffs and other R-1 workers are entitled to an award of punitive damages.

Ninth Cause of Action
Unjust Enrichment Under State Common Law
(Against All Defendants)
(On Behalf of Plaintiffs and the New Jersey Class, California Class, Illinois Class, Texas Class, and Georgia Class)

399.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

400.    As described in the paragraphs above, Defendants received a benefit from the Plaintiffs and the other R-1 workers by having them perform stonework and/or construction work at Defendants' properties, to the detriment of Plaintiffs and the other R-1 workers.

401.    As described in the paragraphs above, Defendants received that benefit from Plaintiffs and the other R-1 workers by fraud, duress, and/or the taking of an undue advantage.

402.    Defendants' retention of that benefit without substantial payment to the Plaintiffs and the other R-1 workers would be unjust and would violate fundamental principles of justice, equity, and good conscience.

403.    Plaintiffs and R-1 workers expected to be paid at the time they were recruited to perform the work in New Jersey and in California, Illinois, Texas, and/or Georgia.

404.    A reasonable person in the Plaintiffs' and the R-1 workers' position would have expected to receive remuneration for the benefit they provided.

405.    No valid and enforceable written contract existed governing the services performed by Plaintiffs and the R-1 workers.

406.    Plaintiffs and the other R-1 workers are therefore entitled to damages pursuant to New Jersey common law and California, Illinois, Georgia, and/or Texas common law, as applicable based on the locations in which they worked, in amounts to be determined at trial.

Tenth Cause of Action
(Quantum Meruit under State Common Law)
(Against All Defendants)
(On Behalf of Plaintiffs and the New Jersey Class, California Class, Illinois Class, Texas Class, and Georgia Class )

407.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

408.    As described in the paragraphs above, the Plaintiffs and the other R-1 workers performed stonework and construction work services in good faith for Defendants.

409. The Plaintiffs and the other R-1 workers did not perform stonework and construction work services gratuitously.

410. The Plaintiffs and the other R-1 workers performed stonework and construction work services pursuant to an explicit request for the services by the defendant.

411. The stonework and construction work services performed by the workers were accepted by the Defendants.

412. Plaintiffs and the other R-1 workers reasonably expected full compensation for the stonework and construction work services that they performed.

413. The stonework and construction work services performed by Plaintiffs and the other R-1 workers conferred a benefit on Defendants.

414. The benefit of these services was conferred upon Defendants under circumstances that should have put the Defendants on notice that the Plaintiffs and the R-1 workers expected to be paid for the full value of the services.

415. No valid and enforceable written contract existed to prescribe payment for the services performed by Plaintiffs and the R-1 workers.

416. Plaintiffs were damaged in the amount of the reasonable value of the services they provided.

417. Plaintiffs and the other R-1 workers are therefore entitled to damages pursuant to New Jersey common law and California, Illinois, Georgia, and/or Texas common law, as applicable based on the locations in which they worked, in amounts to be determined at trial.

Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

WHEREFORE, Plaintiffs request that this Court enter an Order:

a.  assuming jurisdiction over this action;

b.  declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible R-1 workers who choose to do so to opt-in to this action;

c.  certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

d.  Declaring that the Defendants violated the TVPA, the RICO, and Section 1981;

e.  declaring that the Employer Defendants violated the FLSA, the Robbinsville Employer Defendants violated New Jersey Wage & Hour and Wage Payment laws, the Los Angeles Employer Defendants violated the California Labor Code, and the Chicago Defendants violated the Illinois Minimum Wage Law;

f.  permanently enjoining Defendants from further violations of the FLSA, New Jersey Wage & Hour and Wage Payments laws, the California Labor Code, the Illinois Minimum Wage Law, the TVPA, the RICO, and Section 1981;

g.  granting judgment to Plaintiffs and the other R-1 workers on their TVPA claims and awarding them compensatory and punitive damages;

h.  granting judgment to Plaintiffs and other R-1 workers on their RICO claims and awarding them their pecuniary losses, trebled.

i.  granting judgment to Plaintiffs and other R-1 workers who opt into this action pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

j.  granting judgment to Plaintiffs and the other R-1 workers who labored at the Robbinsville temple on their New Jersey Wage & Hour law and Wage Payment law claims and awarding them their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

k.  granting judgment to Plaintiffs Umesh Chand, Prem Singh, Bablu, Chhail Wiharee, Harendra, Niranjan, Lauxmi Narain, Rama Ram, Vijendra Singh, Khima Ram Rebari, and the other R-1 workers who labored at the Los Angeles temple on their California Labor Code wage and hour claims and awarding them their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

l.  granting judgment to Plaintiffs Devi Laal, Lauxmi Narain, Rama Ram and the other R-1 workers who labored at the Chicago temple on their Illinois Minimum Wage Law claims and awarding them their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

m.  granting judgment to Plaintiffs and the other R-1 workers on their Section 1981 claims and awarding them their damages, including punitive damages;

n.  granting judgment to Plaintiffs and the other R-1 workers on their quantum meruit and unjust enrichment claims under New Jersey, California, Illinois, Texas, and Georgia common law, as applicable based on the locations in which they worked, and awarding them damages as allowed by law;

o.  awarding Plaintiffs and the R-1 workers prejudgment and postjudgment interest as

allowed by law;

p.  awarding Plaintiffs and the R-1 workers their costs and reasonable attorneys' fees;

and

q.  granting such further relief as the Court finds just.


DATED:      Princeton, NJ
            February 3, 2022

                            JAFFE GLENN LAW GROUP

                            /s/ Andrew Glenn
                            Andrew Glenn
                            300 Carnegie Center, Ste. 150
                            Princeton, NJ 08540
                            (201) 431-8069
                            aglenn@jaffeglenn.com
                            *Local Counsel for Plaintiffs*

                            Patricia Kakalec
                            Hugh Baran
                            Kakalec Law PLLC
                            195 Montague Street, 14th Floor
                            Brooklyn, NY 11201
                            (212) 705-8730
                            Patricia@KakalecLaw.com
                            Hugh@KakalecLaw.com
                            *(admitted pro hac vice)*

                            Daniel Werner
                            Radford & Keebaugh, LLC
                            315 W. Ponce de Leon Ave., Suite 1080
                            Decatur, GA 30030
                            (678) 271-0304
                            dan@decaturlegal.com
                            *(admitted pro hac vice)*

                            *Attorneys for Plaintiffs*