# CORRECTED
# EXHIBIT 2

THE AHMEDABAD MERCANTILE
CO-OP BANK LTD.,
SOLA ROAD, AHMEDABAD.

GUJ/SOS/AUTH/AVI 188 /2007

भारत  48919  SPECIAL ADHESIVE  राजस्व
185576  FEB 27 2017

₹80 ₹80 ₹80 ₹80 ₹80 ₹80 ₹80  12:24
Rs.0000100/- PB6531

INDIA  STAMP DUTY  GUJARAT







SERIAL No. 75/2017

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 01/03/2017

## VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY

This Volunteer Agreement ("**Agreement**") is made as of the ____first____ day of ____March____ ____2017____ (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2. **MUKESH KUMAR** residing in India at VILLAGE-TALIMPUR,POST-NAWALI, TEHSIL-BAYANA,RAJASTHAN,INDIA., hereinafter "**Volunteer**", of the **Other Part**.

WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

1



WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. <u>Agreement to volunteer.</u> BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

   BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

   This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. <u>Description of Volunteer's duties.</u> Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally

2



render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. <u>Manner of performance of Volunteer's duties.</u> Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. <u>Compensation.</u> Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. <u>Volunteer responsibilities.</u>

    a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

    b. Volunteer shall not:

        i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

        ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

        iii. offer assistance or benefit to any organization except BAPS and its affiliates.

    c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

    d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services

3





pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

a.  There is a need of continued service in the position held by Volunteer;

b.  The performance by Volunteer in the service assigned is at least satisfactory; and

c.  There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7.  <u>Termination for cause.</u>  BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

a.  Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

b.  Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

c.  Volunteer uses illegal drugs;

d.  Volunteer fails to perform his/her duties in a competent manner for any reason;

e.  Volunteer violates duties of confidentiality and/or non–competition under this agreement;

f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

4



g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  <u>Medical suitability and testing.</u>  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  <u>Confidentiality.</u>  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS.  This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

a.  not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

5



b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. <u>Surrender of documents.</u>  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. <u>Intellectual work product.</u>  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. <u>Volunteerism.</u>  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God. It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God. It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

13. <u>Assumption of Risk.</u>  The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily

6

assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. <u>Non-disparagement.</u> During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. <u>No waiver.</u> No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. <u>Remedies for breach.</u> BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

17. <u>Entire agreement.</u> This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

7





18. <u>Modification.</u> Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. <u>Non-assignability by Volunteer.</u> This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. <u>Legal Rights.</u>  The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. <u>Construction.</u>  Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive.  The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. <u>Severability.</u>  If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. <u>Headings.</u>  The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. <u>Counterparts.</u>  This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. <u>Laws.</u>  This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. <u>Dispute resolution.</u>  Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.  Every such dispute, difference,

8





disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9



## ACCEPTANCE AND ACKNOWLEDGMENT

I, **MUKESH KUMAR,** have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☐    I confirm that I have reviewed the terms of this offer with legal counsel.

☑    I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the _____ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _____ Date: _____ 1 MAR 2017 _____

Name of Volunteer: **MUKESH KUMAR**

Residence Address: VILLAGE-TALIMPUR,POST-NAWALI, TEHSIL-BAYANA,RAJASTHAN,INDIA.

**WITNESS:**

Signature: _____ Date: _____ 1 MAR 2017 _____

Name of Witness: **Dharmendrakumar Mahendrabhai Patel**

Residence Address: BAPS Swaminarayan Mandir
Shahibaug Road, Shahibaug
Ahmedabad – 380004, India

BEFORE ME

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
01/03/2017

IDENTIFIED BY ME
VIPUL J. VANRA
ADVOCATE
(G-110-2009)

10

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge,
S.G. Road, Gota, Ahmedabad-382 481



**INTERPRETER'S STATEMENT AND SIGNATURE**

I, **Ravi Kanaiyalal Acharya**, certify that I am fluent in English and in _____ Hindi _____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____    Date: _1 MAR 2017

Name of Interpreter: **Ravi Kanaiyalal Acharya**

Residence Address: BAPS Swaminarayan Mandir
Shahibaug Road, Shahibaug
Ahmedabad – 380004, India

**BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.**

Signature: _____

Kanu Patel, Chief Executive Officer

Date: _February 22, 2017_

BEFORE ME

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 01/03/2017

11



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:** Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation. A Religious Stone Artisan shall perform the function of stone carving and stone assembly. A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. <u>Pre-requisites for a Religious Stone Artisan</u> : While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan. In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action. These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*. These practices in BAPS include, but are not limited to:

   a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmãn* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmãn* and follow the norms of BAPS such as *ãhãr shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

   b. *Pujã* – A ritual of worship of venerations/prayers performed every morning. *Pujã* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

   c. *Sabhã* – a religious assembly where devotional songs are sung and scriptures are read. Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

   d. *Ãrti* – Hindu ritual of waving lighted wicks before the murti as an act of worship. By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

   e. Hindu *Shãstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction. Moreover, he learns of accounts described in the *Shãstras* from the *Mahãbhãrat, Rãmãyan, Upanishads* and *Vedas*.

12



**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. Travel Health insurance. BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. Housing. Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. Meals. Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. Transportation. Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. Out-of-pocket expenses. Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. Air fare.

    a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service. Employee shall not be given cash compensation in lieu of airfare. If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

    b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

    c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

    d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

    e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13

THE AHMEDABAD MERCANTILE
CO-OP BANK LTD.
SOLA ROAD, AHMEDABAD.

GUJ/SOS/AUTH/AV/ 188 /2007

भारत   48911     SPECIAL   गुजरात
       132577    ADHESIVE   FEB 27 2017

                 १४० १४० २४० १४० ०१० १४० २४०   12:23
                 Rs.0000100/- PB6531

INDIA    STAMP DUTY    GUJARAT







देवी लाल S/o नेमिचाराल

SERIAL No. 72/2017

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 01/03/2017

**VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY**

This Volunteer Agreement ("**Agreement**") is made as of the ___First___ day of ___March___, 20__ (the "Effective Date"), by and between the following parties:

1.  Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2.  **DEVI LAL** residing in India at SAJJANWAS,TEHSIL-ROOPWAS,BHARATPUR, PIN-321404,RAJASTHAN,INDIA., hereinafter "**Volunteer**", of the **Other Part**.

WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

1

देवी लाल



WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. Agreement to volunteer. BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

   BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

   This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. Description of Volunteer's duties. Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally

2

हे वलाभ



render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. Volunteer responsibilities.

   a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

   b. Volunteer shall not:

      i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

      ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

      iii. offer assistance or benefit to any organization except BAPS and its affiliates.

   c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

   d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

6. Term of Volunteer Service. The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("Commencement Date"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services

3

हेल्री माता



pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

    a.  There is a need of continued service in the position held by Volunteer;

    b.  The performance by Volunteer in the service assigned is at least satisfactory; and

    c.  There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7.  <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

    a.  Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

    b.  Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

    c.  Volunteer uses illegal drugs;

    d.  Volunteer fails to perform his/her duties in a competent manner for any reason;

    e.  Volunteer violates duties of confidentiality and/or non–competition under this agreement;

    f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

4





g. Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h. Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i. Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j. Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8. <u>Medical suitability and testing.</u> Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9. <u>Confidentiality.</u> During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS. This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

a. not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

5





b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. Surrender of documents. Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. Intellectual work product. Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. Volunteerism. Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God. It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God. It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

13. Assumption of Risk. The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily

6



assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. <u>Non-disparagement.</u>  During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. <u>No waiver.</u>  No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.  No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. <u>Remedies for breach.</u>  BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

17. <u>Entire agreement.</u>  This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

7





18. <u>Modification.</u> Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. <u>Non-assignability by Volunteer.</u> This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. <u>Legal Rights.</u> The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. <u>Construction.</u> Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive. The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. <u>Severability.</u> If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. <u>Headings.</u> The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. <u>Counterparts.</u> This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. <u>Laws.</u> This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. <u>Dispute resolution.</u> Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.   Every such dispute, difference,

8

ई श्री काम



disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

के श्री काम



### ACCEPTANCE AND ACKNOWLEDGMENT

I, **DEVI LAL,** have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☐    I confirm that I have reviewed the terms of this offer with legal counsel.

☑    I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the _____ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _____ Date: __1 MAR 2017__

Name of Volunteer: **DEVI LAL**

Residence Address: SAJJANWAS,TEHSIL-ROOPWAS,BHARATPUR, PIN-321404,RAJASTHAN,INDIA.

**WITNESS:**

Signature: _____ Date: __1 MAR 2017__

Name of Witness: **Dharmendrakumar Mahendrabhai Patel**

Residence Address: BAPS Swaminarayan Mandir
Shahibaug Road, Shahibaug
Ahmedabad – 380004, India

**BEFORE ME**

**U. P. BHATT**
NOTARY
GOVT. OF INDIA

10

IDENTIFIED BY ME

VIPUL J. VANRA
ADVOCATE
(G-110-2009)

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge.
S.G. Road, Gota, Ahmedabad-382 481



**INTERPRETER'S STATEMENT AND SIGNATURE**

I, **Ravi Kanaiyalal Acharya**, certify that I am fluent in English and in _____Hindi_____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____  Date: ____1 MAR 2017____

Name of Interpreter: **Ravi Kanaiyalal Acharya**

Residence Address: BAPS Swaminarayan Mandir
                   Shahibaug Road, Shahibaug
                   Ahmedabad – 380004, India

**BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.**

Signature: _____
           Kanu Patel, Chief Executive Officer

Date: ___February 27, 2017___

BEFORE ME

U. P. BHATT
NOTARY
GOVT. OF INDIA
01/03/2017

11



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:** Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation. A Religious Stone Artisan shall perform the function of stone carving and stone assembly. A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. <u>Pre-requisites for a Religious Stone Artisan</u> : While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan. In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action. These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*. These practices in BAPS include, but are not limited to:

   a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

   b. *Pujā* – A ritual of worship of venerations/prayers performed every morning. *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

   c. *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read. Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

   d. *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship. By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

   e. Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction. Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat, Rāmāyan, Upanishads* and *Vedas*.

12
हे श्रीमिन



### Exhibit B

### Assistance Provided by BAPS in Furtherance of Volunteerism

1. <u>Travel Health insurance.</u> BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>
   a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service. Employee shall not be given cash compensation in lieu of airfare. If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

   b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

   c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

   d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

   e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13
हस्ताक्षर







## VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY

This Volunteer Agreement ("**Agreement**") is made as of the **6th** day of **January, 2017** (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2. **Niranjan** residing in India at **BHUSAWAR, MAHATA PATTI, DIBLI RD, BHARATPUR, 321406, RAJASTHAN, INDIA.**, hereinafter "**Volunteer**", of the **Other Part**.

1





WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. Agreement to volunteer.  BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter.  The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer.  The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes.  In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. Description of Volunteer's duties. Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described

2



हिरेन

in Exhibit A attached to this Agreement.  A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time.  The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3.  Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4.  Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer.  Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement.  Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5.  Volunteer responsibilities.

   a.  Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

   b.  Volunteer shall not:

      i.  conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

      ii.  conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

      iii.  offer assistance or benefit to any organization except BAPS and its affiliates.

   c.  Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

   d.  Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.



3



6. <u>Term of Volunteer Service.</u>  The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

   a.  There is a need of continued service in the position held by Volunteer;

   b.  The performance by Volunteer in the service assigned is at least satisfactory;  and

   c.  There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u>  BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

   a.  Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

   b.  Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

   c.  Volunteer uses illegal drugs;

   d.  Volunteer fails to perform his/her duties in a competent manner for any reason;

4



e.  Volunteer violates duties of confidentiality and/or non–competition under this agreement;

f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  <u>Medical suitability and testing.</u>  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  <u>Confidentiality.</u>  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS.  This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5



    a. not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

    b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

    c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

    d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. <u>Surrender of documents.</u>  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. <u>Intellectual work product.</u>  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. <u>Volunteerism.</u>  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

<u>Statement on Volunteerism</u>

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6

13. Assumption of Risk. The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. Non-disparagement. During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. No waiver. No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. Remedies for breach. BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

7



निरंजन

17. Entire agreement.  This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. Modification. Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. Non–assignability by Volunteer. This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. Legal Rights.  The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. Construction.  Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive.  The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. Severability.  If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. Headings.  The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. Counterparts.  This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. Laws.  This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. Dispute resolution.  Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8



of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey. Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9





SERIAL No. 35/2017

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
DT. 18/01/2017

## ACCEPTANCE AND ACKNOWLEDGMENT

I, **Niranjan**, have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☐ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the **HINDI** language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**
Signature: निरंजन s/o रमेशचन्द
निरंजन
Date: 1 8 JAN 2017

Name of Volunteer:    **Niranjan**

Residence Address:    **BHUSAWAR, MAHATA PATTI, DIBLI RD, BHARATPUR, 321406, RAJASTHAN, INDIA.**

**BEFORE ME**

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
DT. 18/01/2017

**WITNESS:**
Signature: D.M. Patel
Date: 1 8 JAN 2017

Name of Witness: DHARMENDRA KUMAR MAHENDRA KUMAR BHAI PATEL

Residence Address: BAPS SWAMINARAYAN, MANDIR, SHAHIBAUG AHMEDABAD 380004 GUJARAT INDIA



10

**IDENTIFIED BY ME**

Vanra.G.

**VIPUL J. VANRA**
ADVOCATE
(G-110-2009)

**INTERPRETER'S STATEMENT AND SIGNATURE**

I, _DHARMENDRA M PATEL_, certify that I am fluent in English and in _HINDI_ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _D.M.Patel_  Date: _1 8 JAN 2017_

Name of Interpreter: _DHARMENDRA KUMAR MAHENDRA BHAI PATEL_

Residence Address: _BAPS SWAMI NARAYAN, MANDIR, SHAHI BAUG_
_AHMEDABAD - 380004 GUJARAT INDIA_



BEFORE ME

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
Dt. 18/01/2017

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.

Signature: _Kanu Patel_

Kanu Patel, Chief Executive Officer

Date: _JANUARY 31, 2017_

11



UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge,
S.G. Road, Gota, Ahmedabad-382 481



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:**  Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation.  A Religious Stone Artisan shall perform the function of stone carving and stone assembly.  A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1.  Pre-requisites for a Religious Stone Artisan : While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan.  In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action.  These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*.  These practices in BAPS include, but are not limited to:

    a.  Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

    b.  *Pujā* – A ritual of worship of venerations/prayers performed every morning. *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

    c.  *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read.  Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

    d.  *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship.  By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

    e.  Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction.  Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat, Rāmāyan, Upanishads* and *Vedas*.



12

निरंजन

**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. <u>Travel Health insurance.</u>  BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>

    a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service.  Employee shall not be given cash compensation in lieu of airfare.  If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

    b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

    c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

    d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

    e. BAPS shall also arrange for any necessary air travel arrangements within the United States.



13



THE AHMEDABAD MERCANTILE
CO-OP BANK LTD.,
SOLA ROAD, AHMEDABAD

GUJ/SOS/AUTH/AV/ 188 /2007

भारत  48944
120575        FEB 27 2017

SPECIAL ADHESIVE        गुजरात

12:29
Rs.0000100/- P86531

INDIA    STAMP DUTY    GUJARAT





SERIAL No. 105|2017

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 2|03|2017



RAMA Ram S.



## VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY

This Volunteer Agreement ("**Agreement**") is made as of the 2nd day of March 2017 (the "Effective Date"), by and between the following parties:

1.  Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [•], hereinafter "**BAPS**"; and

2.  **SARGARA RAMA RAM** residing in India at SARAGORO,VPO-MALNU,VIA-NANA, TEHSIL-BALI,PALI,RAJASTHAN,INDIA, hereinafter "**Volunteer**", of the **Other Part**.

WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

1

RAMARAM



WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. Agreement to volunteer. BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. Description of Volunteer's duties. Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally

RAmARAm
2



render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. <u>Manner of performance of Volunteer's duties.</u> Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. <u>Compensation.</u> Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. <u>Volunteer responsibilities.</u>

   a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

   b. Volunteer shall not:

      i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

      ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

      iii. offer assistance or benefit to any organization except BAPS and its affiliates.

   c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

   d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States (**"Commencement Date"**). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services

3

RAMARAM



pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

    a.  There is a need of continued service in the position held by Volunteer;

    b.  The performance by Volunteer in the service assigned is at least satisfactory; and

    c.  There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7.  <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

    a.  Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

    b.  Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

    c.  Volunteer uses illegal drugs;

    d.  Volunteer fails to perform his/her duties in a competent manner for any reason;

    e.  Volunteer violates duties of confidentiality and/or non–competition under this agreement;

    f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

4

*RAMARAM*



g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  <u>Medical suitability and testing.</u>  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  <u>Confidentiality.</u>  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS. This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

a.  not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

5

*RAmARAm*



b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. <u>Surrender of documents.</u>  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. <u>Intellectual work product.</u>  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. <u>Volunteerism.</u>  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

13. <u>Assumption of Risk.</u>  The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily

6

RAMARAM

assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. <u>Non-disparagement.</u> During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. <u>No waiver.</u> No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. <u>Remedies for breach.</u> BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

17. <u>Entire agreement.</u> This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

7

RAm ARAm



18. Modification. Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. Non-assignability by Volunteer. This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. Legal Rights. The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. Construction. Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive. The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. Severability. If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. Headings. The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. Counterparts. This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. Laws. This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. Dispute resolution. Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey. Every such dispute, difference,

8

RAMARAM



disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9

*RAMA RAM*



## ACCEPTANCE AND ACKNOWLEDGMENT

I, **SARGARA RAMA RAM,** have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☐    I confirm that I have reviewed the terms of this offer with legal counsel.

☑    I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the _____ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _RAMARAM SI, NENu Ram_____ Date: __·2 MAR 17___

Name of Volunteer: **SARGARA RAMA RAM**

Residence Address: SARAGORO,VPO-MALNU,VIA-NANA, TEHSIL-BALI,PALI,RAJASTHAN,INDIA

**WITNESS:**

Signature: _____ Date: __·2 MAR 2017___

Name of Witness: **Dharmendrakumar Mahendrabhai Patel**

Residence Address: BAPS Swaminarayan Mandir
Shahibaug Road, Shahibaug
Ahmedabad – 380004, India

**BEFORE ME**

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
Dt. 24 03 2017

10

**UPENDRA P. BHATT**
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge,
S.G. Road, Gota, Ahmedabad-382 481

IDENTIFIED BY ME
VIPUL J. VANRA
ADVOCATE
(G-110-2009)

**INTERPRETER'S STATEMENT AND SIGNATURE**

I, **Ravi Kanaiyalal Acharya**, certify that I am fluent in English and in _____*Hindi*_____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____    Date: __**2 MAR 2017**____

Name of Interpreter:  **Ravi Kanaiyalal Acharya**

Residence Address: BAPS Swaminarayan Mandir
                   Shahibaug Road, Shahibaug
                   Ahmedabad – 380004, India



**BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.**

Signature: _____
          Kanu Patel, Chief Executive Officer

Date: __MARCH 1, 2017__

**BEFORE ME**

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
Dt. 2/03/2017

11
RAMA-RAM



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:** Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation. A Religious Stone Artisan shall perform the function of stone carving and stone assembly. A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. <u>Pre-requisites for a Religious Stone Artisan</u> : While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan. In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action. These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*. These practices in BAPS include, but are not limited to:

   a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

   b. *Pujā* – A ritual of worship of venerations/prayers performed every morning. *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

   c. *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read. Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

   d. *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship. By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

   e. Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction. Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat, Rāmāyan, Upanishads* and *Vedas*.

12

RAMA RAM



**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. <u>Travel Health insurance.</u> BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>

    a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service. Employee shall not be given cash compensation in lieu of airfare. If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

    b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

    c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

    d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

    e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13

RAMARAM



THE AHMEDABAD MARCANTILE
CO - OP BANK LTD.
GIRDHARNAGAR BRANCH
AHMEDABAD - 380004

No.GUJ / SOS / AUTH / AV / 400 / 2016

भारत    STAMP DUTY    गुजरात    SPECIAL ADHESIVE
00000
Rs.≈0000100≈ 20.11.2018
366549    GUJARAT
INDIA ★★Zero★Zero★Zero★Zero★One★★Zero★Zero★★★





SERIAL No. 240/20 18

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 22/11/2018

## VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY

This Volunteer Agreement ("**Agreement**") is made as of the ___22nd___ day of
__November__, __2018__ (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●] hereinafter "**BAPS**"; and

2. _Rameshkumar S/o. Ramaram Meena_ residing in India at _VPO Malou, Via: NANA, Teh: Bali, Pali_ _Dayathem_, hereinafter '**Volunteer**", of the Other Part.

1



WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. <u>Agreement to volunteer.</u> BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

   BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

   This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. <u>Description of Volunteer's duties.</u> Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described

2

रमेश कुमार



in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. <u>Manner of performance of Volunteer's duties.</u> Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. <u>Compensation.</u> Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. <u>Volunteer responsibilities.</u>

    a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

    b. Volunteer shall not:

        i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

        ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS, or

        iii. offer assistance or benefit to any organization except BAPS and its affiliates.

    c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

    d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

3



6. <u>Term of Volunteer Service.</u>  The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**").  The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

  a.  There is a need of continued service in the position held by Volunteer;

  b.  The performance by Volunteer in the service assigned is at least satisfactory;  and

  c.  There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u>  BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable.  BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

  a.  Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

  b.  Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

  c.  Volunteer uses illegal drugs;

  d.  Volunteer fails to perform his/her duties in a competent manner for any reason;

4



e.  Volunteer violates duties of confidentiality and/or non-competition under this agreement;

f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  Medical suitability and testing.  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  Confidentiality.  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS.  This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5





a. not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. <u>Surrender of documents.</u>  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. <u>Intellectual work product.</u>  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. <u>Volunteerism.</u>  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

<u>Statement on Volunteerism</u>

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6





13. <u>Assumption of Risk.</u>  The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. <u>Non-disparagement.</u>  During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. <u>No waiver.</u>  No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.  No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. <u>Remedies for breach.</u>  BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

7



17. <u>Entire agreement.</u> This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. <u>Modification.</u> Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. <u>Non-assignability by Volunteer.</u> This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. <u>Legal Rights.</u>  The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. <u>Construction.</u> Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive.  The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. <u>Severability.</u> If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. <u>Headings.</u> The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. <u>Counterparts.</u> This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. <u>Laws.</u> This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. <u>Dispute resolution.</u> Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8





of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.   Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9

इमश कुमार



**ACCEPTANCE AND ACKNOWLEDGMENT**

I, _Rameshkumar S/o Ramaram Meena_ have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☑ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the _Hindi_ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: रमेश कुमार                                    Date: 22/11/2008

Name of Volunteer: रमेश कुमार /c रामाराम मीणा

Residence Address: गांव मालेड़ मु०पो० मालेड़ त० बाली

जि० पाली राज्यस्थान पिन कोड 306504

**WITNESS:**

Signature: _____                    Date: 22/11/2018

Name of Witness: _____ **BHARAT GANDHI**

Residence Address: ___ Planning Cell, BAPS Swaminarayan Mandir,

Shahibaug, Ahmedabad - 380004. GJ, IN.

**IDENTIFIED BY ME**

_Vamud_
**VIPUL J. VANRA**
ADVOCATE
(G-110-2009)

10

**BEFORE ME**

_hutt_
**U. P. BHATT**
NOTARY
GOVT. OF INDIA
प्र. 22/11/2018.



## INTERPRETER'S STATEMENT AND SIGNATURE

I, ____RAVI KANAIYALAL ACHARYA_____, certify that I am fluent in English and in

_____Hindi_____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____ Date: __92|11|18_____

Name of Interpreter: RAVI KANAIYALAL ACHARYA

Residence Address: ___Planning Cell, BAPS Swaminarayan Mandir,_____

Shahibaug, Ahmedabad - 380004. GJ, IN.

ATTESTED BY

U. P. BHATT
NOTARY
GOVT. OF INDIA
M·22|11|2018

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.

Signature: _____

Kanu Patel, Chief Executive Officer

Date: __November 29, 2018__

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge,
S.G. Road, Gota, Ahmedabad-382 481

11



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:**  Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation.  A Religious Stone Artisan shall perform the function of stone carving and stone assembly.  A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. Pre-requisites for a Religious Stone Artisan :

While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan.  In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action.  These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*.  These practices in BAPS include, but are not limited to:

a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms.  The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

b. *Pujā* – A ritual of worship of venerations/prayers performed every morning.  *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

c. *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read.  Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

d. *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship.  By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

e. Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction.  Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat*, *Rāmāyan*, *Upanishads* and *Vedas*.

12





**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. <u>Travel Health insurance.</u>  BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>

   a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service.  Employee shall not be given cash compensation in lieu of airfare.  If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

   b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

   c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

   d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

   e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13

ड्षश्र छ्ञा८







SERIAL No 68/2018

**U. P. BHATT**
NOTARY
GOVT. OF INDIA
Dt. 27-02-2018.

**VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY**

This Volunteer Agreement ("**Agreement**") is made as of the __27__ day of __February__, __2018__ (the "Effective Date"), by and between the following parties:

1.  Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2.  __Devaram Chunaram Meena__ residing in India at __Nag Singh, Mandir Ke piche, Ward No 5 Malnoo, Pali Rajasthan__, hereinafter "**Volunteer**", of the **Other Part**.

1

डेवाराह

WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. <u>Agreement to volunteer.</u> BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. <u>Description of Volunteer's duties.</u> Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described

2





in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. Volunteer responsibilities.

    a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

    b. Volunteer shall not:

        i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

        ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

        iii. offer assistance or benefit to any organization except BAPS and its affiliates.

    c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

    d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

3





6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

   a. There is a need of continued service in the position held by Volunteer;

   b. The performance by Volunteer in the service assigned is at least satisfactory;  and

   c. There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable.  BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

   a. Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

   b. Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

   c. Volunteer uses illegal drugs;

   d. Volunteer fails to perform his/her duties in a competent manner for any reason;

4





e.  Volunteer violates duties of confidentiality and/or non-competition under this agreement;

f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  <u>Medical suitability and testing.</u>  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  <u>Confidentiality.</u>  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS.  This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5





    a.  not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

    b.  exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

    c.  not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

    d.  take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. <u>Surrender of documents.</u>  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. <u>Intellectual work product.</u>  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. <u>Volunteerism.</u>  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

<u>Statement on Volunteerism</u>

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6



13. Assumption of Risk. The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. Non-disparagement. During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. No waiver. No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. Remedies for breach. BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

7





17. <u>Entire agreement.</u>  This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. <u>Modification.</u> Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. <u>Non-assignability by Volunteer.</u> This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. <u>Legal Rights.</u>  The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. <u>Construction.</u>  Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive.  The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. <u>Severability.</u>  If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. <u>Headings.</u>  The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. <u>Counterparts.</u>  This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. <u>Laws.</u>  This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. <u>Dispute resolution.</u>  Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8





of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.   Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9





**ACCEPTANCE AND ACKNOWLEDGMENT**

I, _Devajam Zhunajam_, have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☑ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the ___Hindi___ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _____  Date: 26/2/18

Name of Volunteer: _____

Residence Address: _____

**WITNESS:**

Signature: _____  Date: 26/02/2018

Name of Witness: _Bharat Gaadhi_

Residence Address: _Housing-dl, BAPS Swaminarayan mandir, Shahibaug, Ahmedabad_



ATTESTED BY

U. P. BHATT
NOTARY
GOVT. OF INDIA
27/02/2018

IDENTIFIED BY ME

PANKAJ K. BRAHMBHATT
ADVOCATE
(G/1036/2004)

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower
Opp. Satyamev Vista Under Gota Bri.
S.G. Road, Gota, Ahmedabad - 382 481

**INTERPRETER'S STATEMENT AND SIGNATURE**

I, RAVI KANAIYALAL ACHARYA_____, certify that I am fluent in English and in

_____Hindi_____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____ Date: 28/2/18

Name of Interpreter: **RAVI KANAIYALAL ACHARYA**

Residence Address: **Planning Cell, BAPS Swaminarayan Mandir,**

_____**Shahibaug, Ahmedabad - 380004. GJ, IN.**_____



ATTESTED BY

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 27/02/2018

**BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.**

Signature: _____

Kanu Patel, Chief Executive Officer

Date: NOVEMBER 29, 2018

11

इवारेह

## Exhibit A

### Description of Volunteer's Duties

**Volunteer's designation:** Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation. A Religious Stone Artisan shall perform the function of stone carving and stone assembly. A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. <u>Pre-requisites for a Religious Stone Artisan:</u> While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan. In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action. These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*. These practices in BAPS include, but are not limited to:

   a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

   b. *Pujā* – A ritual of worship of venerations/prayers performed every morning. *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

   c. *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read. Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

   d. *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship. By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

   e. Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction. Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat, Rāmāyan, Upanishads* and *Vedas*.

12





**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. <u>Travel Health insurance.</u> BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>

   a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service.  Employee shall not be given cash compensation in lieu of airfare.  If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

   b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

   c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

   d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

   e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13





69



THE KALUPUR COMM. CO-OP. BANK LTD., MADHUPURA BR. AHMEDABAD-380004 GUJ/SOS/AUTH/AVI 202/2007

भारत    35455    SPECIAL ADHESIVE    गुजरात
150143    DEC 22 2017

16:00
Rs.0000100/- PB6619

INDIA    STAMP DUTY    GUJARAT



रुपाराम s/ पुनाराम

SERIAL No. 69/2018

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 27/02/2018

**VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY**

This Volunteer Agreement ("**Agreement**") is made as of the 27th day of February, 2018 (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2. Ruparam Punaram Garasia residing in India at Kalumbea i, Valli, Sirohi Rajasthan, hereinafter "**Volunteer**", of the **Other Part**.

1

रुपाराम



WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. Agreement to volunteer. BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

   BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

   This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. Description of Volunteer's duties. Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described

2

रूपाराम



in Exhibit A attached to this Agreement.  A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time.  The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer.  Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement.  Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. Volunteer responsibilities.

    a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

    b. Volunteer shall not:

        i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

        ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

        iii. offer assistance or benefit to any organization except BAPS and its affiliates.

    c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

    d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

3

રૂપારામ

6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

    a. There is a need of continued service in the position held by Volunteer;

    b. The performance by Volunteer in the service assigned is at least satisfactory; and

    c. There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

    a. Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

    b. Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

    c. Volunteer uses illegal drugs;

    d. Volunteer fails to perform his/her duties in a competent manner for any reason;

4

रूपाराम



e. Volunteer violates duties of confidentiality and/or non–competition under this agreement;

f. Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g. Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h. Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i. Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j. Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8. Medical suitability and testing. Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9. Confidentiality. During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS. This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5

ऱ्पाराम



a. not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

b. exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c. not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d. take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. Surrender of documents.  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. Intellectual work product.  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. Volunteerism.  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

### Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6

रुपाराम



13. Assumption of Risk.  The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. Non-disparagement.  During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. No waiver.  No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.  No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. Remedies for breach.  BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

7

रुपारान्न



17. Entire agreement. This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. Modification. Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. Non-assignability by Volunteer. This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. Legal Rights. The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. Construction. Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive. The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. Severability. If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. Headings. The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. Counterparts. This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. Laws. This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. Dispute resolution. Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8

२७पारा२म



of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.  Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9

रूपारा‍म



## ACCEPTANCE AND ACKNOWLEDGMENT

I, _Rupalam Puralam Gagasia_, have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☑ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the ___Hindi___ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: रूपाराम                    Date: 2₹-2-2018

Name of Volunteer: रूपाराम ૪૬ पुनाराम

Residence Address: गांव= कालूम्बरी वहसील पिंडवाडा

जिला सिरोही ( राजस्थान )

**WITNESS:**

Signature: _____          Date: 27/02/2018

Name of Witness: _____**BHARAT GANDHI**_____

Residence Address: ___Planning Cell, BAPS Swaminarayan Mandir,___

___Shahibaug, Ahmedabad - 380004. GJ, IN.___

ATTESTED BY

U. P. BHATT
NOTARY
GOVT. OF INDIA
04.27/2/2018.

IDENTIFIED BY ME

**PANKAJ K. BRAHMBHATT**
ADVOCATE
(G/1036/2004)



UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp Satyamev Vista, Under Gota Overbridge
S.G. Road, Gota, Ahmedabad-382 481



### INTERPRETER'S STATEMENT AND SIGNATURE

I,     RAVI KANAIYALAL ACHARYA     , certify that I am fluent in English and in

     Hindi     language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____ Date: 02/2/18

Name of Interpreter: RAVI KANAIYALAL ACHARYA

Residence Address:  Planning Cell, BAPS Swaminarayan Mandir,

Shahibaug, Ahmedabad - 380004. GJ, IN.

BEFORE ME

U. P. BHATT
NOTARY
GOVT. OF INDIA 27/02/2018
Dt. 27

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.

Signature: _____
Kanu Patel, Chief Executive Officer

Date: NOVEMBER 29, 2018

11



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:**  Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation.  A Religious Stone Artisan shall perform the function of stone carving and stone assembly.  A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. Pre-requisites for a Religious Stone Artisan :

    While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan.  In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action.  These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*.  These practices in BAPS include, but are not limited to:

    a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmān* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmān* and follow the norms of BAPS such as *āhār shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

    b. *Pujā* – A ritual of worship of venerations/prayers performed every morning. *Pujā* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

    c. *Sabhā* – a religious assembly where devotional songs are sung and scriptures are read.  Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

    d. *Ārti* – Hindu ritual of waving lighted wicks before the murti as an act of worship.  By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

    e. Hindu *Shāstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction.  Moreover, he learns of accounts described in the *Shāstras* from the *Mahābhārat, Rāmāyan, Upanishads* and *Vedas*.

12





**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. Travel Health insurance.  BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. Housing. Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. Meals. Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. Transportation. Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. Out-of-pocket expenses. Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. Air fare.

   a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service.  Employee shall not be given cash compensation in lieu of airfare. If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

   b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

   c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

   d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

   e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13

२०५।२।७

THE AHMEDABAD MARCANTILE
CO · OP BANK LTD.
GIRDHARNAGAR BRANCH
AHMEDABAD - 380004

No.GUJ / SOS / AUTH / AV / 400 / 2016



भारत STAMP DUTY
00000
Rs ≈ 0000100 ≈ 20.11.2018
365549
INDIA *·Zero*Zero*Zero*Zero*One*·Zero*Zero*··

गुजरात
SPECIAL ADHESIVE
GUJARAT

7576 6426325

NOTARIAL NOTARIAL

NOTARIAL NOTARIAL



SERIAL NO. 234/2018

U. P. BHATT
NOTARY
GOVT. OF INDIA
 U. 21/11/2018

**VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY**

This Volunteer Agreement ("**Agreement**") is made as of the 21 day of November, 2018 (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2. Khimaram S/o. Dungnhgji Rebari residing in India at Rabariyo Ka vas, VPO Malnu, Teh: Bali, Pali Rajasthan

, hereinafter "**Volunteer**", of the **Other Part**.

1



WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. Agreement to volunteer. BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. Description of Volunteer's duties. Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described

2

सीमाराम



in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. Volunteer responsibilities.

    a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

    b. Volunteer shall not:

        i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

        ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

        iii. offer assistance or benefit to any organization except BAPS and its affiliates.

    c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

    d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.

3

स्वी भा/2 ।भे

6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

   a. There is a need of continued service in the position held by Volunteer;

   b. The performance by Volunteer in the service assigned is at least satisfactory; and

   c. There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

   a. Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

   b. Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

   c. Volunteer uses illegal drugs;

   d. Volunteer fails to perform his/her duties in a competent manner for any reason;

4



e. Volunteer violates duties of confidentiality and/or non-competition under this agreement;

f. Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g. Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h. Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i. Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j. Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8. Medical suitability and testing. Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9. Confidentiality. During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS. This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5

रवीमा राम



a.  not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

b.  exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c.  not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d.  take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. Surrender of documents.  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. Intellectual work product.  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. Volunteerism.  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6





13. Assumption of Risk. The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. Non-disparagement. During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. No waiver. No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. Remedies for breach. BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.

7

ટ્રબિમારૂ|મ



17. <u>Entire agreement.</u>  This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. <u>Modification.</u> Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. <u>Non-assignability by Volunteer.</u> This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. <u>Legal Rights.</u>  The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. <u>Construction.</u>  Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive.  The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. <u>Severability.</u>  If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. <u>Headings.</u>  The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. <u>Counterparts.</u>  This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. <u>Laws.</u>  This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. <u>Dispute resolution.</u>  Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8



of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.   Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)

9



**ACCEPTANCE AND ACKNOWLEDGMENT**

I, _Khimaram S/o. Dunguming Rebari_ have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☑ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the ___Hindi___ language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _श्रीमाराम_ Date: _21-11-2018_

Name of Volunteer: _श्रीमाराम S/o डुंगारामजी रबारी_

Residence Address: _मु: पोस्टमालन जि पाली त. बाली_

_राजस्थान पिन 305504_

**WITNESS:**

Signature: _Brijesh_ Date: _21/11/2018_

Name of Witness: _____**BHARAT GANDHI**_____

Residence Address: ___Planning Cell, BAPS Swaminarayan Mandir,___

___Shahibaug, Ahmedabad - 380004. GJ, IN.___

**IDENTIFIED BY ME**

_Vamar_

**VIPUL J. VANRA**
ADVOCATE
(G-110-2009)

10

**BEFORE ME**

**U. P. BHATT**
NOTARY
GOVT. OF INDIA

_M. 22/11/2018._

**INTERPRETER'S STATEMENT AND SIGNATURE**

I, ___RAVI KANAIYALAL ACHARYA_____, certify that I am fluent in English and in

___Hindi_____ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: _____    Date: ___21/11/18_____

Name of Interpreter: RAVI KANAIYALAL ACHARYA

Residence Address:  Planning Cell, BAPS Swaminarayan Mandir,

Shahibaug, Ahmedabad - 380004. GJ, IN.



ATTESTED BY

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dh . 24/11/2018.

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.

Signature: _____
Kanu Patel, Chief Executive Officer

Date: NOVEMBER 29, 2018

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp. Satyamev Vista, Under Gota Overbridge,
S.G. Road, Gota, Ahmedabad-382 481

11



**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:**  Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation.  A Religious Stone Artisan shall perform the function of stone carving and stone assembly.  A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1.  Pre-requisites for a Religious Stone Artisan :

While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan.  In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action.  These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*.  These practices in BAPS include, but are not limited to:

a.  Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmãn* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmãn* and follow the norms of BAPS such as *ãhãr shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

b.  *Pujã* – A ritual of worship of venerations/prayers performed every morning. *Pujã* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

c.  *Sabhã* – a religious assembly where devotional songs are sung and scriptures are read.  Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

d.  *Ãrti* – Hindu ritual of waving lighted wicks before the murti as an act of worship.  By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

e.  Hindu *Shãstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with traditional Mandir construction.  Moreover, he learns of accounts described in the *Shãstras* from the *Mahãbhãrat*, *Rãmãyan*, *Upanishads* and *Vedas*.

12





**Exhibit B**

**Assistance Provided by BAPS in Furtherance of Volunteerism**

1. <u>Travel Health insurance.</u>  BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. <u>Housing.</u> Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. <u>Meals.</u> Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. <u>Transportation.</u> Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. <u>Out-of-pocket expenses.</u> Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. <u>Air fare.</u>

   a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service. Employee shall not be given cash compensation in lieu of airfare. If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

   b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

   c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

   d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

   e. BAPS shall also arrange for any necessary air travel arrangements within the United States.

13



## VOLUNTEER AGREEMENT AND WAIVER OF LIABILITY

This Volunteer Agreement ("**Agreement**") is made as of the **6th** day of **January, 2017** (the "Effective Date"), by and between the following parties:

1. Bochasanwasi Shri Akshar Purushottam Swaminarayan Sanstha, Inc., a Delaware exempt corporation organized under the laws of the State of Delaware in the United States of America and having its principal office at Piscataway, New Jersey [●], hereinafter "**BAPS**"; and

2. **Kumar Mahendra** residing in India at **55 MEHTA PATTI, BHUSAWAR, WEIR, BHARATPUR, 321406, RAJASTHAN, INDIA.**, hereinafter "**Volunteer**", of the **Other Part**.

1



WHEREAS, BAPS is the North American entity of the Bochasanwasi Shri Akshar Purushottam Swaminarayan denomination of the Hindu religion, commonly known as BAPS Swaminarayan Sanstha denomination; and

WHEREAS, BAPS is building a traditional Hindu Mandir and Swaminrayan Akshardham North America in Robbinsville, New Jersey for the propagation of the denomination;

WHEREAS, the traditional Hindu Mandir shall be built with marble and other intricately carved stones in accordance with the ancient Hindu scriptures of Sthapatyashastra and Shilpshastra;

WHEREAS, the science of stone carving is a tradition that has been passed on from generation to generation among Religious Stone Artisans.

WHEREAS, in order to build the traditional Hindu Mandir, BAPS is in need of such Religious Stone Artisans who wish to serve this religious project by providing their skill as their devotion and dedication to the religion;

WHEREAS, BAPS wishes to accept volunteer services of Volunteer viz. the Religious Stone Artisan upon the terms and conditions contained herein and Volunteer is willing to serve BAPS upon the terms and conditions herein;

NOW, THEREFORE, in consideration of the mutual covenants herein set forth, the parties agree to be legally bound as follows:

1. <u>Agreement to volunteer.</u> BAPS hereby accepts the Volunteer's services and the Volunteer hereby agrees to provide such volunteer services of the Volunteer as explained hereinafter. The Volunteer will not be participating in activities for BAPS as an employee or independent contractor, but only as a Volunteer. The Volunteer hereby acknowledges that the Volunteer is not an employee of BAPS and that the Volunteer will not be treated or regarded as BAPS' employee for tax, employment insurance, for availing any benefits that may be available to the BAPS' employees or for any other purposes. In accordance with this relationship, BAPS will not withhold taxes or other amounts that would normally be withheld from payments to an employee of BAPS.

BAPS will be responsible only in accordance with the terms set out herein and it is expressly agreed and understood by the Volunteer that benefit plans to which regular employees of BAPS, if any, are entitled, including but not limited to health insurance, disability benefits, or otherwise, will not be made available to the Volunteer.

This Agreement shall not be construed or understood to indicate or constitute either party as the partner, or a joint venture, employee or employer of the other, nor it would be understood or construed to indicate or constitute any relationship between the parties other than that of a volunteer relationship.

2. <u>Description of Volunteer's duties.</u> Subject to the supervision and pursuant to the orders, advice, and direction of BAPS, the Volunteer shall perform his/her duties as are described



2

महेंद्रभाई

in Exhibit A attached to this Agreement. A detailed outline of the service assigned will be briefed to the Volunteer upon arrival in the United States. During the Volunteer's tenure of volunteer service, changes in the service assignment may be made by BAPS according to its current needs and development from time to time. The Volunteer shall additionally render such other services and duties as may be assigned to him/her from time to time by BAPS.

3. Manner of performance of Volunteer's duties. Volunteer shall at all times faithfully, industriously, and to the best of his/her ability, experience, and talent, perform all duties that may be required of and from him/her pursuant to the express and implicit terms hereof, to the reasonable satisfaction of BAPS. Such duties shall be rendered at the Hindu American Religious Center in Robbinsville, NJ and at such other place as BAPS shall in good faith require or as the interests, needs, service, and opportunities of BAPS shall require or make advisable from time to time.

4. Compensation. Volunteer agrees that his/her services are provided voluntarily and out of Volunteer's free will to BAPS and especially due to the Volunteer's devotion and dedication to the religion and therefore BAPS is never required to pay any compensation in whatever form to the Volunteer. Since the Volunteer shall be travelling to the United States to provide the voluntary services, BAPS shall provide certain benefits which are described in full in Exhibit B attached to this Agreement. Volunteer shall be eligible for such benefits only upon commencement of his/her services in the United States and not otherwise.

5. Volunteer responsibilities.

   a. Volunteer shall adhere to the policies, procedures, instructions and code of conduct established by BAPS.

   b. Volunteer shall not:

      i. conduct any activities that diverts his/her full or partial concentration, dedication and time from the duties allocated to him/her by BAPS;

      ii. conduct any activities that result in financial remuneration or in-kind reward from any other source or entity other than BAPS; or

      iii. offer assistance or benefit to any organization except BAPS and its affiliates.

   c. Volunteer is not presently engaged in, nor shall during the period of volunteering with BAPS in terms of this Agreement, enter into any employment or agency relationship with any third party.

   d. Volunteer shall not conduct or participate in any activity that is in violation of his/her non-immigrant visa status in the United States and/or applicable federal, state and local laws.



3



6. <u>Term of Volunteer Service.</u> The period of volunteer service governed by this Agreement shall commence on issuance of a non-immigrant visa (R-1 visa) by a United States Consulate to the Volunteer and arrival in the United States ("**Commencement Date**"). The period of volunteer service shall terminate at the end of the requirement of the volunteer service as decided by BAPS, or if the Volunteer decides to terminate his/her services pursuant to this agreement or upon expiration of the non-immigrant visa or the period of stay in the United States as mandated by the United States Citizenship and Immigration Services, whichever is earlier ("**Termination Date**").

On termination of this agreement, volunteer services shall cease and the Volunteer shall return to India.

After Volunteer's return to India, this Agreement may be renewed in the sole discretion of BAPS provided the following criteria are fulfilled:

   a. There is a need of continued service in the position held by Volunteer;

   b. The performance by Volunteer in the service assigned is at least satisfactory; and

   c. There are no blemishes on the Volunteer's character which would adversely affect his/her continued service with BAPS.

If, for any reason, BAPS is unable to obtain an appropriate United States visa for the Volunteer, this Agreement shall terminate with immediate effect, without any rights and obligations accruing to either party.

7. <u>Termination for cause.</u> BAPS may terminate this Agreement at any time "for cause", the grounds for which are defined below. In the case of termination for cause, BAPS shall have no obligation to make any payments to the Volunteer under this Agreement save and except for the benefits as listed out in Exhibit B to the extent applicable. BAPS must give actual notice to Volunteer of termination for cause but may deliver said notice by any manner, either orally or in writing. BAPS may make termination for cause effective immediately.

Grounds for Termination with "Cause". Commission of any of the following acts by Volunteer constitutes grounds for BAPS to terminate Volunteer "for cause" under this paragraph:

   a. Volunteer is convicted or charged with a felony crime, and BAPS finds independently that the charges are accurate;

   b. Volunteer commits a crime of moral turpitude such as an act of fraud or other crime involving dishonesty or misrepresentation;

   c. Volunteer uses illegal drugs;

   d. Volunteer fails to perform his/her duties in a competent manner for any reason;



4

HEBBMIL

e.  Volunteer violates duties of confidentiality and/or non–competition under this agreement;

f.  Volunteer accepts an offer for future volunteer service and/or employment with a competitor of BAPS during the term of this Agreement;

g.  Volunteer fails to comply with directives from superiors, or written policies of BAPS;

h.  Volunteer commits any act or acts that harm BAPS's reputation, standing, or credibility within the community(ies) it operates or with its followers, volunteers, or any external agency;

i.  Volunteer fails to abide by the code of conduct as is applicable to adherents of the BAPS Swaminarayan Sanstha denomination; or

j.  Volunteer commits an act of fraud or dishonesty or misappropriates any funds or embezzles any property of BAPS, its affiliates, employees, volunteers or agents.

The above list is a representative (and not exhaustive) sample of such activities and BAPS reserves the exclusive right to modify the same from time to time.

8.  <u>Medical suitability and testing.</u>  Volunteer hereby declares that, to the best of his/her knowledge, there is no medical condition, either physical or psychological, of which he/she is aware of and which would impede his/her performance, or hold an actual potential risk to the health and safety of the Volunteer himself/herself, a fellow volunteer or a member of the public or any employee of BAPS. BAPS may, at its discretion, and consistent with governing laws, require Volunteer to undergo medical examinations as a prerequisite for service or from time to time should this appear necessary or justified.

9.  <u>Confidentiality.</u>  During the course of Volunteer's volunteer service, he/she may have access to confidential and proprietary information of BAPS including, but not limited to certain (a) intellectual property, project specifications, development plans, financial information, marketing materials, contract terms, pricing and cost information, service information and other proprietary information of BAPS; (b) information revealed by any other materials furnished to Volunteer by BAPS; and (c) the identity and information of all vendors, suppliers, volunteers, officers, employees, agents, associates, and other relationships of BAPS (collectively "Confidential Information"). Volunteer acknowledges that Confidential Information is owned and shall continue to be owned solely by BAPS. Volunteer agrees that after termination of his/her volunteer service, irrespective of the reason for termination, he/she will not willfully and materially, directly or indirectly, use or divulge Confidential Information without the prior written consent of BAPS.    This obligation is in addition to any obligations Volunteer has under state or federal trade secrets law, as may be applicable.

Moreover, Volunteer agrees generally to keep confidential all such Confidential Information of BAPS, and more specifically that he/she and all related persons shall:

5





a.  not use Confidential Information for any purpose whatsoever or divulge disclose Confidential Information to any person other than to persons to whom BAPS has given its consent in writing, unless Volunteer is compelled to disclose it by governmental or judicial process;

b.  exercise all reasonable efforts to prevent unauthorized parties from gaining access to the Confidential Information in Volunteer's possession;

c.  not assert any claims of prior knowledge of any items of Confidential Information unless Volunteer can clearly and convincingly, by written document or other evidence satisfactory to BAPS, prove such prior knowledge; and

d.  take such other protective measures as may be reasonably necessary to preserve the secrecy and proprietary interests of BAPS in Confidential Information

10. Surrender of documents.  Volunteer agrees to promptly surrender to BAPS, upon termination of volunteer service for any reason, or at any time prior thereto, any Confidential Information, document, memorandum, record, letter, specification or other paper, or computer software, documentation and related materials, and all data and related files in Volunteer's possession or under Volunteer's control relating to the operations, employees, volunteers or affairs of BAPS or its affiliates.

11. Intellectual work product.  Any document, writing, invention, process, creative mark or other work which Volunteer may make or conceive of, either alone or with others, at any time while he/she is a volunteer of BAPS which in any way relates to the affairs of BAPS, shall be the sole property of BAPS and Volunteer shall have no rights in nor claims thereto (including, but not limited to, rights or claims accruing under the copyright, trademark, or patent laws of any country).

12. Volunteerism.  Volunteer acknowledges the tradition of service in the BAPS Swaminarayan Sanstha and as a part of this Agreement has read and understood the organization's "Statement of volunteerism" as detailed hereinafter:

### Statement on Volunteerism

*"If one becomes addicted to serving God and His devotees to the extent that one would not be able to stay for even a moment without serving them, then all of the impure desires in one's mind will be destroyed."*

--Vachnamritam, Gadhada Section II - 25

It is the belief of the BAPS Swaminarayan Sanstha that service of others is a primary mode of worship of God.  It is through selfless service that an individual is able to rid oneself of baser instincts and begin to move closer to God.  It is in that spirit that the BAPS Swaminarayan Sanstha encourages each of its devotees to follow a path of service to the Mandir and its devotees.

6



13. Assumption of Risk.  The Volunteer acknowledges that performing volunteer activities at BAPS may involve certain elements of risk and the possibility of an accident of which the Volunteer has fully familiarized himself/herself with. The Volunteer hereby voluntarily assumes all risks of property damage and personal injury/damage of any kind sustained during volunteer activities with BAPS.

The Volunteer agrees to waive, release, discharge, indemnify and hold harmless BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers from any and all claims, liabilities, losses, damage, costs and expenses resulting from any injury or damage to themselves or their property which occurs during or in association with volunteer activities, whether such injury or damages were caused in whole or in part by the acts or omissions (negligent or otherwise) of BAPS and all BAPS associated organizations in United States of America and other nations, their members, officers, directors, employees, agents and volunteers.

The Volunteer understands and agrees that assumption of risk and waiver of liability is binding upon his heirs, executors, administrators, and permitted assigns.

14. Non-disparagement.  During Volunteer's service with BAPS, and for a period of twelve (12) months following the termination of his/her volunteer service with BAPS, whether termination is voluntary or involuntary, and regardless of the reason(s) for such termination, Volunteer shall not either individually or through any other person, firm, organization, entity, or corporation, disparage BAPS, its officers, agents, volunteers or employees.

15. No waiver.  No waiver of any breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature. No failure on the part of any party to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

16. Remedies for breach.  BAPS acknowledges that a breach by the Volunteer of any provisions of this Agreement will cause BAPS great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Volunteer acknowledges that BAPS shall be entitled to, in addition to any contractual rights or other remedies it may have at law, equity or otherwise, the remedies of injunction, specific performance and other equitable relief for a breach by Volunteer of any of the provisions of this Agreement; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which BAPS may have hereunder or for damages or any other remedy at law.



7



17. Entire agreement. This Agreement expresses the entire Agreement of the parties with respect to the subject matter hereof, and except as provided herein, any and all prior promises, representations, understandings, arrangements and agreements between the parties regarding the subject matter hereof are superseded by this Agreement.

18. Modification. Only the Chief Executive Officer of BAPS shall have the authority on behalf of BAPS to agree to modify or change the terms of this Agreement or anything in reference thereto. Any such modification or change must be in writing and signed by both parties hereto.

19. Non-assignability by Volunteer. This is a personal service agreement which must be performed by the individual named herein as Volunteer and, as such, performance hereof may not be assigned or subcontracted without the express written consent of BAPS. However, BAPS retains the power to assign or transfer its rights under this Agreement.

20. Legal Rights. The Volunteer understands and agrees that in signing this volunteer agreement and waiver of liability, the Volunteer is giving up legal rights and that if the Volunteer has questions in this regard, the Volunteer is advised to seek the advice of legal counsel.

21. Construction. Unless the context otherwise requires, the singular and plural forms in this Agreement shall be mutually inclusive, and the masculine, feminine and neuter forms in this Agreement shall be mutually inclusive. The words including, includes, and included shall be deemed to be followed by the phrase "but not limited to."

22. Severability. If any provision of this Agreement shall be deemed invalid or unenforceable as written, it shall be construed, to the extent possible, in a manner which shall render it valid and enforceable, and any limitations on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof. No invalidity or unenforceability shall affect any other portion of this Agreement. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

23. Headings. The headings in this Agreement are for convenience of reference only and are not intended to define or limit the contents of any section or paragraph.

24. Counterparts. This Agreement may be signed in counterparts, which taken together, shall constitute one complete and fully executed Agreement.

25. Laws. This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without giving effect to principles of conflicts of laws.

26. Dispute resolution. Any dispute or controversy between the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning or construction

8



of this Agreement, shall be referred to a single arbitrator agreed upon by the parties to such dispute. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall take place in New Jersey.   Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be final and binding upon all of the parties.

(Signature page to follow)

(The remainder of this page is intentionally left blank)



9

SERIAL No. 21/2017

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 18/01/2017

## ACCEPTANCE AND ACKNOWLEDGMENT

I, **Kumar Mahendra**, have had ample opportunity to review the terms of BAPS' offer of volunteer work as set out in this "Volunteer Agreement and Waiver of Liability" with legal counsel. If I did not do so, it is because I understood the terms of the offer, and the consequences of agreeing to them, and I decided not to seek legal advice with respect thereto.

I hereby accept the offer of volunteer work set out above. I acknowledge that I am accepting this offer freely, voluntarily and without duress, and with a full understanding of the consequences of doing so.

☐ I confirm that I have reviewed the terms of this offer with legal counsel.

☑ I confirm that I had the opportunity to review the terms of this offer with legal counsel, but chose not to.

I confirm that this "Volunteer Agreement and Waiver of Liability" together with its exhibits has been read to me in the **HINDI** language, a language in which I am fluent, by the person named in "Interpreter's Statement and Signature". I understand each and every provision in this agreement.

**VOLUNTEER:**

Signature: _____  Date: **1 8 JAN** 2017

Name of Volunteer:   **Kumar Mahendra**

Residence Address:   **55 MEHTA PATTI, BHUSAWAR, WEIR, BHARATPUR, 321406, RAJASTHAN, INDIA.**

BEFORE ME

U. P. BHATT
NOTARY
GOVT. OF INDIA
Dt. 18/01/2017

**WITNESS:**

Signature: _____D. M. Patel_____  Date: **1 8 JAN** 017

Name of Witness:   DHARMENDRA KUMAR MAHENDRA BHAI PATEL

Residence Address:   BAPS SWAMINARAYAN, MANDIR SHAHIBAUG AHMEDABAD - 380004 GUJRAT INDIA

10

IDENTIFIED BY ME

Vanra G.
VIPUL J. VANRA
ADVOCATE
(G-110-2009)

**INTERPRETER'S STATEMENT AND SIGNATURE**

I, ___DHARMENDRA M PATEL___, certify that I am fluent in English and in ___HINDI___ language.

I further certify that I have read the entire Volunteer Agreement together with its exhibits, to the Volunteer in the above-mentioned language, and the Volunteer has understood the entire agreement and all provisions contained therein.

Signature: ___D.M.Patel___    Date: ___1 8 JAN 2017___

Name of Interpreter: ___DHARMENDRA KUMAR MAHENDRA BHAI PATEL___

Residence Address: ___BAPS SWAMINARAYAN MANDIR SHAHI BAUG AHMEDABAD- 380004 GUJRAT INDIA___

BOCHASANWASI SHRI AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA, INC.

BEFORE ME

U. P. BHATT
NOTARY
GOVT. OF INDIA

Signature: ___Kanu Patel___
Kanu Patel, Chief Executive Officer

Date: ___JANUARY 31, 2017___

11

UPENDRA P. BHATT
Advocate & Notary
703, Shail Heritage Tower,
Opp.Satyamev Vista, Under Gota Overbridge
S.G. Road, Gota, Ahmedabad-382 4

**Exhibit A**

**Description of Volunteer's Duties**

**Volunteer's designation:** Religious Stone Artisan

**Volunteer's duties:**

A Religious Stone Artisan is a person skilled in the science of stone carving which has been passed on from generation to generation. A Religious Stone Artisan shall perform the function of stone carving and stone assembly. A Religious Stone Artisan shall be responsible for constructing a traditional Hindu Mandir by installing the stone on site layer by layer in accordance with the Hindu scriptures.

1. Pre-requisites for a Religious Stone Artisan : While the Religious Stone Artisan is a master of this art that began during the Vedic times and has been passed on from generation to generation, there are numerous religious practices he must engage in to be called a religious stone artisan. In order to perform the task of building a Traditional *Mandir*, one must be both pure of mind and action. These religious practices allow the religious stone artisan to focus his thoughts on God as he builds the Traditional *Mandir*. These practices in BAPS include, but are not limited to:

   a. Member/Follower of the Hindu Faith – While there is no singular definition of being Hindu or following Hinduism, the religious stone artisans who build temples for the BAPS denomination take *vartmãn* (sacred vow) to follow certain rules and norms. The Religious Stone Artisan is required to take such *vartmãn* and follow the norms of BAPS such as *ãhãr shudhi* (vegetarian diet), daily religious reading, refraining from abusive substances such as alcohol and drugs, etc.

   b. *Pujã* – A ritual of worship of venerations/prayers performed every morning. *Pujã* occurs after one bathes in the morning but prior to commencing any other activity including eating. This ritual reminds a devotee it is God who has given everything to us and we show our appreciation by remembering Him every morning.

   c. *Sabhã* – a religious assembly where devotional songs are sung and scriptures are read. Sitting in such religious assemblies is what provides one with spiritual knowledge and allows for contemplative thought.

   d. *Ãrti* – Hindu ritual of waving lighted wicks before the murti as an act of worship. By singing and hearing the *Arti*, one utilizes all 5 senses in his/her devotion towards God.

   e. Hindu *Shãstra* (Scripture) Knowledge – The Religious Stone Artisan learns the scriptures in great detail, especially those dealing with Traditional Mandir construction. Moreover, he learns of accounts described in the *Shãstras* from the *Mahãbhãrat, Rãmãyan, Upanishads* and *Vedas*.



12

हस्ताक्षर

## Exhibit B

### Assistance Provided by BAPS in Furtherance of Volunteerism

1. Travel Health insurance.  BAPS shall provide Volunteer with necessary travel health insurance BAPS shall bear any expenses as a result of sickness, ill health or injury to the Volunteer during the tenure of this Agreement. BAPS shall be entitled to reimbursement for such expenses from the travel health insurance.

2. Housing. Volunteer shall be provided housing by BAPS. Volunteer shall be required to stay in such housing as provided by BAPS.

3. Meals. Volunteer shall be provided meals by BAPS which includes healthy breakfast, lunch, dinner and light snacks.

4. Transportation. Volunteer shall be provided transportation between residence and the BAPS facility, if necessary.

5. Out-of-pocket expenses. Volunteer shall be provided a reasonable sum in the amount of $50.00 per month to meet his/her out-of-pocket expenses for daily needs.

6. Air fare.

    a. BAPS shall make necessary air travel arrangements for Volunteer to travel from India to the United States for the duration of his service.  Employee shall not be given cash compensation in lieu of airfare.  If a volunteer choses to depart prior to the term of service or if he is terminated under Paragraph 7 (Termination for Cause), airfare will be his responsibility.

    b. In terms of Section 6 of this Agreement, after thirty (30) months have elapsed from the Commencement Date and prior to the Termination Date, Volunteer shall return to India and the volunteer service shall cease. Necessary air travel arrangements for Volunteer for return travel from the United States to India shall be made by BAPS.

    c. If BAPS is in need of the Volunteer and renews this Agreement, necessary air travel arrangements for the Volunteer's return to the United States from India shall also be made by BAPS. After conclusion of volunteer services, BAPS shall also make necessary air travel arrangements for the Volunteer's final return to India.

    d. During travel, Volunteer shall be responsible for any loss or damage to his/her belongings and any duties or taxes levied on his/her personal belongings by customs department in India, the United States, or any other county of transit.

    e. BAPS shall also arrange for any necessary air travel arrangements within the United States.



13